341 So.2d 513 (1977)
Inquiry Concerning a Judge, No. 74-14.
In re Stewart F. LaMOTTE, Jr.
No. 49982.
Supreme Court of Florida.
January 4, 1977.
Rehearing Denied February 7, 1977.
*515 John R. Asbell of Asbell, Hains & Doyle, Naples, for Judicial Qualifications Commission, complainant.
J.B. Patterson of Patterson, Maloney & Shankweiler, and Marshall G. Curran, Jr., of Spear, Deuschle & Curran, Fort Lauderdale, for Stewart F. LaMotte, Jr., respondent.
ADKINS, Acting Chief Justice.
We have before us a recommendation of the Judicial Qualifications Commission for removal of Judge Stewart F. LaMotte, Jr., of the Seventeenth Judicial Circuit, for conduct unbecoming a member of the judiciary. This recommendation has been filed pursuant to Article V, Section 12(f), Florida Constitution.
Judge Stewart F. LaMotte, Jr. assumed the bench as Circuit Judge in Broward County, Seventeenth Judicial Circuit, on March 7, 1968. Shortly after assuming the bench, the Judge received an air travel credit card. During the period of time from that date through the date of the notice of formal proceeding, the Judge incurred approximately $2,000 in personal charges for various trips to Asheville, North Carolina, Atlanta, Georgia, and Jacksonville, Florida. These personal charges are the subject of the instant proceeding.
The Judge admits the use of the credit card in the manner described, but says that he thought the charges would be deducted from his salary. Restitution was made. At the hearing, three circuit judges testified that the judge had "unquestionable integrity, honesty" and that his reputation was "good." It was stipulated that four additional circuit judges and the President of the Broward County Bar would all testify that the Judge's reputation for truthfulness and honesty was good.
The report of the Judicial Qualifications Commission contains the following:
"FINDINGS OF FACT
"The Commission, having personally heard the testimony and having had the advantage of observing the demeanor of the Respondent and other witnesses while on the witness stand, their candor or lack of candor while testifying, hereby finds that Respondent, Stewart F. LaMotte, Jr., while a member of the Judiciary occupying the position of Circuit Judge of the Seventeenth Judicial Circuit of Florida, paid for air transportation on trips unconnected with his official duties with air travel credit cards issued by the State of Florida for official use only on the dates and to the destinations alleged in paragraph two of the Notice of Formal Proceedings filed herein contrary to the provision of Sec. 112.061(3)(b) Florida Statutes, which unauthorized charges were in the total amount of one-thousand-eight-hundred-seventy-eight dollars and sixty-two cents ($1,878.62). In charging the costs of said trips to the State of Florida on the official credit card issued to him, Respondent used the credit of the State of Florida for his own personal use contrary to law and knew or is presumed to have known that the cost of such trips would be paid by the State and he had no intention of reimbursing the State for the amount of such costs unless and until the unauthorized character of said charges so made was discovered by the State and demand for reimbursement was made upon him.
"CONCLUSIONS OF LAW
"Judge Stewart F. LaMotte, Jr., in conducting himself in the manner set out in the above Findings of Fact intentionally committed serious and grievous wrongs of a clearly unredeeming nature; has rendered himself an object of disrespect and derision in his role as a judge to the point of ineffectiveness and caused public confidence in the Judiciary to become eroded, that in so doing Respondent is guilty of violating Canons 1 and 2 of the Code of Judicial Conduct as adopted by the Supreme Court of Florida on July 25, 1973, and is guilty of conduct unbecoming a member of the Judiciary.
"RECOMMENDATION OF DISCIPLINE
"It is recommended by the Florida Judicial Qualifications Commission that the *516 Supreme Court of Florida render its Order and Judgment removing Respondent from office for his conduct as hereinabove found to have occurred."
Canon 1, of the Code of Judicial Conduct, reads as follows:
"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective."
Canon 2, of the Code of Judicial Conduct, reads as follows:
"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
"B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness."
Our authority rests upon the provisions of Article V, Section 12(f), Florida Constitution, which provides as follows:
"Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member of the judiciary, or be involuntarily retired for any permanent disability that seriously interferes with the performance of his duties."
The findings and recommendations of the Judicial Qualifications Commission are of persuasive force and should be given great weight. See In re Kelly, 238 So.2d 565 (Fla. 1970). However, the ultimate power and responsibility in making a determination rests with this Court.
The degree of proof required to discipline a judge is analogous to that required in disciplining an attorney. This degree of proof must be "clear and convincing." There must be more than a "preponderance of the evidence," but the proof need not be "beyond and to the exclusion of a reasonable doubt." Zachary v. State, 53 Fla. 94, 43 So. 925 (1907), were this Court reversed a judgement of disbarment entered by a circuit court; State ex rel. Florida Bar v. Bass, 106 So.2d 77 (Fla. 1958); Florida Bar v. Rayman, 238 So.2d 594 (Fla. 1970).
It is the responsibility of this Court to review the proceedings before the Judicial Qualifications Commission in the light, and under the guidance, of these rules.
The critical question to be determined is whether or not there is clear and convincing proof that the judge "knew or is presumed to have known" that the charges on his air travel card would not be deducted from his salary.
At the time the judge took office a packet of information was forwarded to him. This packet contained a letter stating that he would be sent a copy of the operating procedures' manual of the Comptroller's office. This manual stated that only official traveling shall be charged to the state.
The judge began making these charges in November 1968, and they were admittedly of a personal nature. State rules and regulations specifically provide for the filing of vouchers in connection with expenses incurred which are related to official business. There was no audit procedure to verify that charges incurred through the use of the air travel card were related to official duties. In other words, the charges on the air travel card were paid by the state, and there was no auditing procedure by which the state checked disbursements for air travel with vouchers required to be submitted in connection with official business.
*517 As an explanation of the reason for the unauthorized charges, Judge LaMotte stated that the credit card was issued in his name and he believed that he was allowed to make whatever charges he desired, both business and personal, and that any charges which were not related to official business would be automatically deducted from his pay.
The improper charges were discovered by a newspaper reporter. When confronted with these allegations the judge contacted the Judicial Administration Commission and was told that he owed the state $412.32 for travel incurred for the summer of 1975. The judge immediately reimbursed the state in this amount, but did not inform the Judicial Administration Commission of the additional charges made since 1968.
When a complete audit was made disclosing the charges for 1968 and other years, the judge immediately made restitution.
The judge had served with distinction as an Industrial Commission Judge, a County Judge in the Probate Division, and a Circuit Judge. He served with distinction in the Marine Corps during World War II. He has enjoyed an excellent reputation for honesty and integrity during his 45 years' residence in Broward County. He had income over and above his income as a circuit judge.
The facts are undisputed. We must now determine whether the facts constitute such clear and convincing proof as to justify an inference that the judge "knew or is presumed to have known" that the charges on his air travel card would not be deducted from his salary.
The Commission says that the explanation is inconsistent with the following:
(1) All deductions from the judge's pay were listed individually on the face of the monthly pay warrant and included deductions for income tax withholding, social security tax, judicial retirement contributions, and Blue Cross Insurance when appropriate.
(2) The judge, by letter, previously requested that the Blue Cross Insurance he discontinued, stating therein "this will eliminate the `miscellaneous deduction' on my pay check."
(3) When informed as to the amount he owed the state for travel incurred during the summer of 1975, the judge failed to inform anyone of the additional charges made since 1968. After the additional charges were discovered, the judge admitted their existence.
On the other hand, the judge suggests the following:
(1) He had no reason to believe that such an inadequate accounting system existed in the State of Florida that his personal charges would not be deducted from his compensation. Therefore, he made no effort to examine his monthly check to be sure that such charges had been deducted.
(2) The evidence of seven people, experienced in their dealings with the judge, as to his honesty and integrity, is inconsistent with the finding that the judge knew or is presumed to have known that the charges would not be deducted from his salary.
A judge is required to conduct himself under standards which are much higher than those required of an attorney. Although we use the same measure of proof in considering grievance procedure against a judge as that used against a lawyer, facts requiring the reprimand or removal of a judge may not in all circumstances require reprimand or disbarment of an attorney.
Lawyers are disbarred only in cases where they commit extreme violations involving moral turpitude, corruption, defalcations, theft, larceny or other serious or reprehensible offenses. Judges should be held to even stricter ethical standards because in the nature of things even more rectitude and uprightness is expected of them. Cf. Cincinnati Bar Association v. Heitzler, 32 Ohio St.2d 214, 291 N.E.2d 477, 482 (1972). But they too should not be subjected to the extreme discipline of removal except in instances where it is free from doubt that they intentionally committed serious and grievous wrongs of a clearly unredeeming nature. The judge should observe high standards of conduct so that the *518 integrity and independence of the judiciary may be preserved. He should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
In determining whether a judge has conducted himself in a manner which erodes public confidence in the judiciary, we must consider the act or wrong itself and not the resulting adverse publicity. Otherwise an unpopular, but correct, decision of a judge could be construed as eroding public confidence in the judiciary. On the other hand, if a judge commits a grievous wrong which should erode confidence in the judiciary, but it does not appear that the public has lost confidence in the judiciary, the judge should nevertheless be removed.
The Commission had the opportunity to hear all of the evidence and observe the demeanor and candor of the witnesses, including the judge. The evidence is clear and convincing that the judge intentionally committed serious and grievous wrongs of a clearly unredeeming nature.
The judge asserts that he was denied due process and equal protection of the law guaranteed him under the Fourteenth Amendment to the Constitution of the United States and Sections 2 and 9, Article I of the Bill of Rights, Florida Constitution. It was necessary that the proceedings be concluded as early as possible, but it does not appear that the expeditious consideration of this cause jeopardized the rights of the judge. We find that there was no violation of his constitutional rights.
The findings and recommendations of the Commission are of persuasive force and are given great weight in our determination that the judge should be removed from office.
It is therefore, our opinion that Stewart F. LaMotte, Jr. should be removed from office with termination of compensation for conduct unbecoming a member of the judiciary effective upon this opinion becoming final.
It is so ordered.
ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., concurs with an opinion, with which ADKINS, Acting C.J., and SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., concurs specially with an opinion, with which ROBERTS (Retired), J., concurs.

NOTICE OF DISQUALIFICATION
At the time of oral argument it became apparent, by reason of my administrative responsibilities that led to the formal charges in this matter, that I should disqualify myself pursuant to Canon 3C(1) of the Code of Judicial Conduct. I thereupon disqualified myself and withdrew from any participation on the merits of this cause.
 s/ Ben F. Overton
 Ben F. Overton
 Chief Justice
ENGLAND, Justice, concurring.
The outcome of this unfortunate case rests exclusively on facts found by the Commission, the critical one being that Judge LaMotte never intended to repay the state for personal expenses unless and until he was contacted for repayment. Both LaMotte and the Commission agree that removal from office is inappropriate unless that intention was present when the air travel charges were incurred.
LaMotte's basic contention before the Court is that he was negligent and careless, nothing more.[1] I have to agree with my colleagues, however, that we are essentially bound by the Commission's finding as a "fact" that LaMotte never intended to repay the state for these expenses unless notified to do so. The record before us contains adequate evidence, although all of it is circumstantial, to support that finding.
*519 Most of LaMotte's charges were incurred in a regular pattern for summer vacations over a seven year period. A few were charges for the air travel of LaMotte's son, billed by the airline at student rates. There is no possibility that the charges could have been appropriate business expenditures for a circuit judge, and Judge LaMotte candidly admits that this is so. His defense to the Commission was that he expected the charges to be deducted from his salary, that he did not submit travel vouchers on which the expenditures were claimed as having been officially incurred, that he treated the state's air travel card as equivalent to any other credit card issued in his name (and was given no reason not to), that he repaid all sums owed when notified that they had not been deducted from his pay, and that he simply never examined his paychecks or his bank deposits at any time to determine whether these personal airfares had in fact been deducted from his monthly paychecks.
The Commission had before it the travel expense records, a 1970 letter from Judge LaMotte requesting an adjustment to his paycheck which reflected a familiarity with the treatment of non-routine deductions on the face of his checks, the air travel card issued by the state which (unlike his other credit cards) bore the markings "ST FL, circuit judge"[2], documentary evidence that he had received a state manual which paraphrased the state's law limiting travel expenses to official state business[3], and some testimony to the effect that other circuit judges serving with Judge LaMotte did not consider using the state's air travel card for personal travel. Although the totality of this evidence is far from overwhelming to demonstrate that Judge LaMotte knew that these travel expenses had not been deducted from his salary checks and therefore never intended to repay the state unless requested to do so, it does support the Commission's ultimate conclusion that Judge LaMotte's claim of mere inattention to detail was simply not believable.[4] The Commission personally heard all of the witnesses, including Judge LaMotte. We have only a transcript of what they said.
It is exceedingly difficult to be responsible for actually removing from office a judge of this state. That duty falls on us, however, and I have concluded that I must accept the Commission's superior vantage point for making the critical factual determination as to Judge LaMotte's intent. For that reason, I concur with my colleagues that removal is warranted.
ADKINS, Acting C.J., and SUNDBERG and HATCHETT, JJ., concur.
BOYD, Justice, concurring specially.
The critical question in this case is whether Judge Stewart F. LaMotte, Jr. intended to defraud the State of Florida by use of his air travel credit card, or used same for personal travel with full intentions of having such amounts deducted from his salary checks.
His pledging of the State's credit for personal expenses by use of the credit card was improper, regardless of his intentions. If he intended to defraud the State, as found by the Judicial Qualifications Commission, removal from office would be proper, but if he intended to repay the State and believed the amounts charged had been withheld from his salary, it is my opinion that a public reprimand, coupled with his suspension from office for approximately five months, should be ample imposition of discipline. It is a matter of common knowledge that not every monthly pay check for a judge is the same, due to the fact that in certain months greater amounts are withheld than others.
*520 To make a determination of whether Judge LaMotte intended to defraud the State it is necessary to evaluate the entire record, including testimony from several judges and the State Attorney that Judge LaMotte has enjoyed a reputation of integrity. It is also necessary to consider that he served honorably with the United States military forces in the Second World War, practiced law and served as a judge without blemish upon his record until these unfortunate events were disclosed. In making a determination of guilt it seems logical to apply the reasonable man standard of whether a person with Judge LaMotte's intelligence and education would gamble his future career in the law by cheating the State out of approximately $1,900 worth of travel expenses for personal use over a period of several years. The logical presumption seems to me that no one with his background would assume such a risk. Therefore, it is necessary to overcome this presumption by clear and convincing proof in the record. In the absence of such clear and convincing proof, he should not be removed from office, but if such proof is there removal would be justified.
My examination of the record, including questions of fact and law, does not persuade me that there is clear and convincing proof to establish that Judge LaMotte intentionally and willfully defrauded the State, but I am strongly persuaded that he used poor judgment and violated State regulations and rules of conduct for judges in his use of the credit card for any personal reason.
Therefore, I concur in the Court's approval of the Judicial Qualifications Commission's finding of misconduct, but would reduce the penalty to a public reprimand and five months' suspension from office which he has already experienced.
ROBERTS (Retired), J., concurs.
NOTES
[1] His contention that the Commission's procedures denied him due process of law is not borne out by the record.
[2] Judge LaMotte agreed that "ST FL" probably was an abbreviation for "State of Florida".
[3] Presently Section 112.061(3)(b), Fla. Stat. (1975).
[4] Common sense and an acquaintance with human nature (several members of the Commission are themselves judges) undoubtedly supplied the balance of evidentiary weight, although it must be conceded that a judge could conceivably be as unconcerned with his financial affairs as Judge LaMotte suggests he was.