PER CURIAM.
In this case we review the determination by the Florida Judicial Qualifications Commission (JQC) that St. Lucie County Court Judge Clifford Barnes violated the Code of Judicial Conduct and its recommendation that he be publicly reprimanded and charged the costs of the proceedings. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons discussed below, we approve the JQC’s determination and recommendation.
I. FACTS AND PROCEEDINGS TO DATE
The charges against Judge Barnes relate to the filing of a petition for writ of mandamus by him in the Fourth District Court of Appeal, wherein Judge Barnes petitioned that the public defender, the state attorney, the county sheriff, and various circuit and county judges be compelled to “comply with the constitutional, statutory, and procedural rules which the Legislature and Florida Supreme Court long ago put in place to provide for a meaningful first appearance hearing for all citizens accused of a crime who cannot immediately make bond.”
Evidence before the commission established that before Judge Barnes was elected to the county court, he served as a county commissioner for St. Lucie County for twelve years. During that time a debate ensued over St. Lucie County jails being overcrowded, and Judge Barnes took the position that the issue was best resolved by reducing the jail population. He took this position after the Institute for Law and Policy Planning, headed by Dr. Alan Kalmanoff, conducted a study of St. Lucie County’s criminal justice system, which concluded, in part, that the lack of a meaningful pretrial release program in St. Lucie County significantly contributed to jail overcrowding. Judge Barnes subsequently sought election as a county court judge, and during his campaign was quoted in the Fort Pierce Tribune on October 29, 2004, as saying, “My opponent seems to think there is not much a judge can do about [jail overcrowding], but I think there is a lot a judge can do.” Judge Barnes won the election and began serving as county court judge in January 2005.
Subsequently, as a county court judge presiding over first appearances in criminal cases, Judge Barnes’ rulings generated some disagreements between him and some of the other judges. For example, one judge sent letters to the chief judge asking that Judge Barnes be transferred to the civil division, asserting that Judge Barnes was inappropriately setting or reducing bond for criminal defendants in order to reduce jail overcrowding. When Judge Barnes released a registered sexual predator, accused of violating probation, on his own recognizance, the chief judge *169 removed Judge Barnes from presiding over first appearances. Nevertheless, Judge Barnes continued to preside over arraignments, where bail bonds were an issue. Later, Judge Barnes wrote an article as a guest columnist stating that St. Lucie County jails are overcrowded because of problems with the local criminal justice system and its pretrial release policies.
Finally, in July 2006, Judge Barnes filed a formal petition for writ of mandamus in the Fourth District Court of Appeal naming himself as petitioner and naming the public defender, state attorney and sheriff as respondents. The body of the petition also cited as respondents the chief judge and numerous circuit and county court judges. The petition sought to compel these respondents to comply with Judge Barnes’ view of Florida law on pretrial release. Judge Barnes also alleged that the relief he requested would normally be sought by the public defender, but that the St. Lucie County public defender was married to a county court judge. Judge Barnes asked that this judge be ordered to recuse himself from presiding over first appearances because of his marital relationship with the public defender. Judge Barnes alleged that he had advised the chief judge of certain deficiencies in first appearance procedures. Regarding the merits, Judge Barnes argued that the respondent judges were
in violation of the United States Constitution, Florida Constitution, Rule 3.130, 3.131, and Section 901.07, 903.046, and 907.041 in that they: a) do not pause after appointing the Public Defender to allow the client and his/her new client to confer b) make no attempt to elicit from the accused or Public Defender any personal information that would mitigate towards a favorable form of pretrial release c) do not specifically address, on the record, the factors listed under Florida law for consideration, d) often deny bond without the presence of a Motion for Pretrial Detention filed by the State, e) give deference to monetary bonds set by the booking officer according to the standard bond schedule, f) set their own bonds according to the monetary standard bond schedule, g) refuse to change bonds other judges have set on warrant cases, h) refuse to change bonds set on arrests made on out of county warrants and i) in general, fail to grant defendants the presumption of pretrial release on non-monetary grounds.
Furthermore, he alleged that the Code of Judicial Conduct required him to “strive to enhance and maintain confidence in our legal system,” “participate in establishing, maintaining, and enforcing high standards of conduct,” and “be faithful to the law ... and not be swayed by partisan interests, public clamor, or fear of criticism,” and that it was in this spirit that this petition was filed. In April 2008, almost two years after the petition was filed, Judge Barnes voluntarily dismissed the petition without a ruling from the Fourth District. Judge Barnes was then quoted in the Palm Beach Post as saying, “I’m declaring victory.”
During the course of these events, formal charges were filed with the JQC against Judge Barnes, which were amended in March 2007, alleging seven counts of misconduct.[1] In a response, Judge Barnes *170 denied any violations of the Code, but admitted the basic facts underlying the charges as set out above. After a two-day hearing, a hearing panel of the JQC concluded that Judge Barnes was guilty on counts 2, 3, 5 (in part),[2] and 6. In its findings the JQC hearing panel concluded “The Petition for Mandamus was the primary matter at issue,” and “[t]he primary question is whether the Petition should have been filed at all.” As discipline, the hearing panel recommended that Judge Barnes be publicly reprimanded by this Court. Upon review, Judge Barnes disputes the hearing panel’s conclusion that his actions violated the Code of Judicial Conduct.
A. JQC Hearing Panel’s Findings and Conclusions
In In re Graziano, 696 So.2d 744, 753 (Fla.1997), this Court described its review of the JQC hearing panel’s findings of fact:
Before reporting findings of fact to this Court, the JQC must conclude that they are established by clear and convincing evidence. In re McAllister, 646 So.2d 173, 177 (Fla.1994). This Court must then review the findings and determine whether they meet this quantum of proof, a standard which requires more proof than a “preponderance of the evidence” but the less than “beyond and to the exclusion of a reasonable doubt.” In re Davey, 645 So.2d 398, 404 (Fla.1994). If the findings meet this intermediate standard, then they are of persuasive force and are given great weight by this Court. See In re LaMotte, 341 So.2d 513, 516 (Fla.1977). This is so because the JQC is in a position to evaluate the testimony and evidence first-hand. See In re Crowell, 379 So.2d 107 (Fla.1979). However, the ultimate power and responsibility in making a determination rests with this Court.
In re Graziano, 696 So.2d at 753.
1. Count 2 — Impartiality
As to count 2, the JQC hearing panel found that the filing of the petition for writ of mandamus created a question as to Judge Barnes’ ability to act in an impartial manner in criminal cases before him, because the filing appeared to advocate for the rights of defendants. The hearing panel concluded that filing the petition constituted a violation of Canons 1, 2, and 3 of the Code of Judicial Conduct, which generally provide that judges shall act in a manner that promotes the impar *171 tiality of the judiciary.[3] Judge Barnes challenges these findings and conclusions and argues that the petition did not advocate for defendants only, but rather advocated for adherence to the laws and rules of pretrial release that exist for all citizens, defendants, victims, and law enforcement. The JQC counters that Judge Barnes’ petition itself asserted that “[rjelief of the type requested here would normally be filed by the circuit’s Public Defender,” which indicates that Judge Barnes was assuming the role of advocate for the defense.
“This Court has emphasized that the object of disciplinary proceedings is not for the purpose of inflicting punishment, but rather to gauge a judge’s fitness to serve as an impartial judicial officer.” In re McMillan, 797 So.2d 560, 571 (Fla.2001) (citing In re Kelly, 238 So.2d 565, 569 (Fla.1970)). “In making that determination, the Court has often pointed out that judges should be held to higher ethical standards than lawyers by virtue of their position in the judiciary and the impact of their conduct on public confidence in an impartial justice system.” Id. (citing In re Boyd, 308 So.2d 13, 21 (Fla.1975)). “Accordingly, no other principle is more essential to the fair administration of justice than the impartiality of the presiding judge.” Id.; see, e.g., In re Gridley, 417 So.2d 950, 953 (Fla.1982) (holding that judge failed to promote public confidence in the integrity and impartiality of the judiciary when he injected himself and his office into a case by advocating for a defendant).
Upon review, we note the opening sentence in Judge Barnes’ petition asserts that the writ of mandamus should be issued to compel respondents “to provide for a meaningful First Appearance Hearing for all citizens accused of a crime who cannot immediately make bond.” As noted, the petition states that ordinarily the public defender would file a petition of this nature. We agree with the JQC that this advocacy raises questions as to Judge Barnes’ impartiality because he has injected himself and his office into a controversy on behalf of defendants who were likely to appear before him at arraignment.
Although we accept the JQC hearing panel’s findings that Judge Barnes had good motives in seeking to reform the local pretrial release system, neither the alleged misconduct of others nor the good motives of a judge excuse departure from the guidelines established in the Code of Judicial Conduct. In re Shea, 759 So.2d 631, 638-39 (Fla.2000) (approving disciplinary recommendation of circuit judge who abused his judicial power but attempted to justify his conduct as an attempt to improve the administration of justice in the Upper Keys and to improve access to mental health resources in the community); In *172 re Graham, 620 So.2d 1273, 1274-75 (Fla.1993) (approving disciplinary recommendation of county judge who abused his judicial power but attempted to justify his conduct as an effort to rid the county of what he perceived as political favoritism and corruption). Accordingly, we hold that the JQC hearing panel’s findings and conclusions on count 2 are supported by clear and convincing evidence.
2. Count 3 — Practice of Law
As to count 3, the JQC hearing panel found that filing the petition constituted the practice of law in violation of Canon 5 of the Code of Judicial Conduct.[4] Canon 5(G) prohibits the practice of law, except when acting pro se.[5] The commentary to Canon 5(G) further explains that “[t]his prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies.”
Judge Barnes concedes that filing the petition constitutes the practice of law, but contends that he was acting pro se, which is permissible under Canon 5(G). The JQC counters by pointing out his assertion that this petition would ordinarily be filed by the public defender. Furthermore, the JQC argues, the style of the petition, the signature, and the certificate of service all assert Judge Barnes’ status as St. Lucie County Judge. As the JQC correctly points out, Judge Barnes signed the petition and the certificate of service in his capacity as St. Lucie County Judge. It was only when Judge Barnes filed the voluntary dismissal that he signed as “Cliff Barnes, Pro Se Petitioner.”
A review of Judge Barnes’ argument for standing in his petition reveals only that he was concerned as a judicial member of the justice system that first appearances were being conducted inappropriately and that he felt required by the Code of Judicial Conduct to take on this issue. We conclude that there is a lack of clear and convincing evidence to indicate that Judge Barnes was practicing law.
Accordingly, we hold that there is a failure of clear and convincing evidence to support the JQC hearing panel’s findings and conclusions that Judge Barnes engaged in the unauthorized practice of law on behalf of indigent criminal defendants in violation of Canon 5 when he filed the petition.
3. Count 5 — Public Attacks
As to count 5, the JQC hearing panel found that Judge Barnes mounted public attacks against his fellow sitting judges when he filed the petition for writ of mandamus. Furthermore, the JQC hearing panel found that Judge Barnes was acting outside his proper judicial function in the manner and scope of his criticism of these other sitting judges. Accordingly, the JQC hearing panel concluded that Judge Barnes violated Canons 1 and 2 of the Code of Judicial Conduct by mounting the public attacks against his fellow sitting judges.
Judge Barnes challenges the JQC hearing panel’s findings and conclusions and *173 argues that he merely sought a definitive ruling on pretrial release practices and first appearances from the Fourth District. The JQC counters that Judge Barnes admitted that the petition constituted a detailed criticism of his colleagues and that his motive for filing the petition was due to anger, frustration, and aggravation with his fellow judges.
In In re Kelly, a judge was publicly reprimanded for filing with the clerk of the circuit court a petition styled, “Petition to the Judges of the Sixth Judicial Circuit in the Circuit Court of Pinellas County” in which the judge suggested court reforms and criticized court administration. 238 So.2d at 567.[6] This Court noted that the clerk’s office “is not a receptacle for the ex parte grievance petition of a politician.” Id. at 568. “Criticism is not neutral,” and a judge’s criticism will ultimately be viewed as having been constructive or destructive of the public’s perception of the judiciary. Id. at 569. This Court has also cautioned judges “against indiscriminately voicing their objection to the law lest they be misunderstood by the public as being unwilling to enforce the law as written, thereby undermining public confidence in the integrity and impartiality of the judiciary.” In re Gridley, 417 So.2d at 954.
While perhaps not as egregious as Kelly or Gridley, Judge Barnes’ petition is highly critical of the judiciary in St. Lucie County. For example, Judge Barnes argued that “[t]he First Appearance judges’ procedures, approved by [the] Chief Judge ..., do not meet the procedural and due process requirements set forth in the Florida Supreme Court’s Criminal Rules of Procedure, Florida Statutes, case law, and the Florida and United States Constitution[s].” Judge Barnes also criticized the judges for not departing from the bonds set by other judges in warrant arrest cases, stating that “[t]he judges believe that ‘collegiality’ prevents them from changing another judge’s bond even though that was set without any input from the accused or their attorney, and with little or no information about the accused.” Judge Barnes asserted further that the respondent judges were in violation of the laws governing first appearances and stated:
[T]he laws and rules cited above are not aspirational goals — they are clear, settled, mandatory, nondiscretionary requirements for booking officers, Public Defenders, State Attorneys, and judges to follow to insure that the accused have a fair determination of pretrial release. It is unconscionable that these officers are incarcerating persons for not obeying laws through a procedure that does not itself follow the law.
Judge Barnes also specifically targeted one judge’s rulings at first appearances by stating, generally, that the judge did not *174 follow the law. Judge Barnes called for the judge’s recusal from first appearances, stating that the judge had a conflict of interest because he was married to the public defender and because “Canon 3, Section E of the Code of Judicial Conduct requires his removal from this position.”[7]
While we agree that much of the judge’s criticism would not be subject to sanction if presented in another context, such as a discussion at a judicial conference, we agree with the JQC that the filing of the petition was inappropriate. In sum, and as demonstrated above, the petition was highly critical of the local judiciary and its filing clearly crossed the line between what is appropriate and what is not. Accordingly, we hold that there is clear and convincing evidence to support the JQC hearing panel’s findings and conclusions that Judge Barnes inappropriately mounted public attacks against his fellow sitting judges in violation of Canons 1 and 2 when he filed the petition.
4. Count 6 — Failure to Follow Proper Channels
As to count 6, the JQC hearing panel found that Judge Barnes failed to follow proper channels regarding the other judges’ alleged misconduct in violation of Canons 1 and 2. Judge Barnes argues that his attempt to speak with his fellow judges was a failure, including his approach to the chief judge, who refused to interfere. According to Judge Barnes, he felt that in seeking a forum that had the jurisdiction and authority to order all of the involved entities to change, the Fourth District Court of Appeal seemed the only available choice. However, the JQC counters that Judge Barnes has never established that the Fourth District even had jurisdiction or legal authority to grant the extensive relief requested. Rather, it appears that Judge Barnes used the petition to make public his dispute with his fellow county judges when the chief judge failed to uphold his position.
A review of the mandamus petition reveals that there is clear and convincing evidence that Judge Barnes chose to go public but failed to follow proper channels regarding the other judges’ alleged misconduct. We agree that it is questionable whether the Fourth District had the authority to grant Judge Barnes’ extensive demands, including the recusal of judges and ordering the chief judge to remove another judge from presiding over first appearances. Accordingly, we hold that there is clear and convincing evidence that Judge Barnes failed to follow the proper channels regarding the other judges’ alleged misconduct when he filed the petition.
B. Discipline
While specifically acknowledging that Judge Barnes was primarily acting with good motives, the JQC hearing panel nevertheless recommends that this Court issue a public reprimand of Judge Barnes for his conduct described above and require him to pay the costs of the proceedings. Judge Barnes does not dispute that this is an appropriate recommendation for the types of violations the JQC hearing panel found. Accordingly, we approve the JQC hearing panel’s recommendation.
We acknowledge that the JQC hearing panel specifically noted Judge Barnes’ mo *175 tivation and further noted that it was “simply not in the position of being able to judge who was right and who was wrong on these very important issues.” Nevertheless, we note that even if Judge Barnes had disputed the recommendation of discipline, we would reject this claim because the JQC hearing panel’s recommendation is appropriate when compared to the discipline imposed in other similar cases. In re Miller, 644 So.2d 75, 78 (Fla.1994) (approving recommendation for public reprimand where judge wrote two letters to the media criticizing the legal system in violation of the Code); In re Gridley, 417 So.2d at 953-55 (approving recommendation for public reprimand where judge violated Code by advocating for another individual); In re Kelly, 238 So.2d at 567, 573-74 (disciplining judge by public reprimand where judge filed a petition with the clerk of the circuit court criticizing the legal system in violation of the Canons of Judicial Ethics). While we encourage judges to be active in seeking to improve the administration of justice, the strident and harsh manner of attack embraced by Judge Barnes combined with his choice of a public forum to attack particular judges and their practices clearly separates this case from legitimate attempts to improve the law. Such harsh public condemnation can only undermine public confidence in the justice system.
III. CONCLUSION
For the reasons stated, we approve the JQC’s conclusion that Judge Barnes violated the Code of Judicial Conduct, and we approve the JQC’s recommendation that Judge Barnes be publicly reprimanded and charged the cost of the proceedings. In accordance with the policy announced in In re Frank, 753 So.2d 1228, 1242 (Fla.2000), we hereby command Judge Clifford Barnes to appear before this Court for the administration of a public reprimand at a time to be established by the clerk of this Court.
It is so ordered.
QUINCE, C.J., WELLS, PARIENTE, LEWIS, CANADY, and POLSTON, JJ., and ANSTEAD, Senior Justice, concur.

.We only quote the counts for which Judge Barnes was found guilty:
2.You have violated Canons 1, 2 and 3 by filing as a judge a Petition for Writ of Mandamus in the Fourth District Court of Appeal that creates the appearance of impropriety concerning your ability to act in an impartial manner as a judge in criminal proceedings.
3.In violation of Canon 5, you filed a Petition for Writ of Mandamus in the Fourth District Court of Appeal advocating *170 a position that benefits third parties and thereby violating that canon's prohibition against a sitting judge practicing law.
[[Image here]]
5. You have violated Canons 1 and 2 by taking actions that called the judiciary into disrepute. These actions include unfounded public attacks against the judiciary and sitting judges and other public officials, demeaning your office by a series of actions including: contempt for the judicial education process; failure to wear appropriate attire during court proceedings; engaging in inappropriate colloquies on the bench with defendants; and by refusal to attend judicial meetings with other judges in your circuit.
6. In violation of Canons 1 and 2 you have demeaned the integrity and independence of the judiciary by failing to follow proper channels concerning grievances regarding other judges’ alleged misconduct. In this regard, you have chosen to air your grievances in the media rather than by taking available steps to bring your complaints to the appropriate authorities, including but not limited to, the Judicial Qualifications Commission and/or the Florida Bar or by steps within the system to enlist the support of other judges to appropriately modify judicial conduct or attitudes.

. The JQC hearing panel found that Judge Barnes was guilty of this count "in a qualified sense,” focusing only on the allegation that Judge Barnes mounted public attacks against the local judiciary.

. Canon 1 provides, in pertinent part, that judges "should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved.” Canon 2(A) provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary,” and Canon 2(B) provides, in pertinent part, that "[a] judge shall not allow family, social, political or other relationships to influence the judge’s judicial conduct or judgment.” Canon 3(A) provides that "[t]he judicial duties of a judge take precedence over all the judge’s other activities. The judge’s judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply,” and Canon 3(B) provides, in part, "[a] judge shall hear and decide matters assigned to the judge ...,” and "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.”

. Canon 5(G) provides that "[a] judge shall not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge’s family.”

. The Florida Constitution also prohibits the practice of law by judges: "All justices and judges shall devote full time to their judicial duties. They shall not engage in the practice of law....” Art. V, § 13, Fla. Const.

. For example, the judge argued in his petition:
The tremendous reduction in the number of prisoners between September, 1965, and September, 1966, is an excellent case in point for the purpose of showing the gross lack of administration of the Circuit Court in Pinellas County and the serious consequences of a poorly administered Court....
[[Image here]]
Virtually every phase of the criminal administration at the present time is burdened with inefficiency.
[[Image here]]
Vast and important and much needed judicial reforms await only the interest and action by the judges of this circuit.
[[Image here]]
The individual judges should impose additionally upon their secretaries in handling the administration and disposition of criminal cases and thus avoid the luxury of a secretary of the Criminal Administrator or Presiding Judge.
In re Kelly, 238 So.2d at 567-68.

. It is clear from the record that Judge Barnes knew that filing the petition would result in a public attack on his fellow judges and would call into question the judiciary’s integrity. In an email sent to the chief judge, Judge Barnes threatened to file a lawsuit if the chief judge did not take action in accordance with Judge Barnes’ interpretation of Florida law. Judge Barnes then stated that he did "not wish to do this as it will add to the bad press you have already allowed us to get.” (Emphasis supplied.)