# Supreme Court of Florida

_____

No. SC20-605

_____

## INQUIRY CONCERNING A JUDGE NO. 19-409 RE: BARBARA KAYE HOBBS.

May 19, 2022

PER CURIAM.

We review the findings and recommendations of the Hearing Panel of the Florida Judicial Qualifications Commission (Hearing Panel) concerning Circuit Judge Barbara Kaye Hobbs. *See* art. V, § 12, Fla. Const. Following an evidentiary hearing on seven paragraphs (including subparagraphs) of charges, the Hearing Panel found Judge Hobbs guilty of the three charges for which she had conceded guilt and one additional charge, and recommended that she be publicly reprimanded, suspended from office without pay for sixty days, and compelled to attend an employee management program. Before this Court, the Judicial Qualifications Commission (JQC) argues that the Hearing Panel should have found Judge Hobbs guilty as to all of the charges and

that the seriousness of her misconduct warrants harsher discipline, up to removal from the bench. As explained below, we conclude that the Hearing Panel should have found Judge Hobbs guilty of one additional violation. Although removal is not appropriate, we agree with the JQC that the recommended discipline is insufficient for the serious misconduct at issue. Consequently, in addition to imposing the Hearing Panel's recommended discipline, we order Judge Hobbs to pay a fine in the amount of $30,000.

## BACKGROUND

Judge Hobbs has served as a circuit judge for the Second Judicial Circuit since 2012 and has no history of prior judicial misconduct. On February 19, 2021, the Investigative Panel of the Judicial Qualifications Commission (Investigative Panel) filed the Amended Notice of Formal Charges (Amended Notice) against her that is at issue in this proceeding, alleging violations of article V, section 13 of the Florida Constitution and multiple Canons of the Florida Code of Judicial Conduct addressed below.

The charges against Judge Hobbs stemmed in part from events relating to her adult son. In 2018, Judge Hobbs's son was charged with misdemeanor DUI in Leon County, which is located

within the Second Judicial Circuit. Judge Hobbs retained an attorney to represent her son. Shortly thereafter, Judge Hobbs assumed another judge's docket, and on that docket were two cases where her son's attorney was the attorney of record. When the cases and her son's attorney appeared before her, Judge Hobbs did not recuse herself nor did she disclose her connection with the attorney. In one case, she granted an agreed motion for continuance. In the other, the parties announced they had agreed to enter a deferred prosecution agreement, and she set a new court date to ensure the agreement had been signed.

On the evening of July 29, 2019, Judge Hobbs's son was arrested after allegedly shooting a person in his home. After learning of the arrest, Judge Hobbs went to the police station where her son was being held. Upon arrival, she asked to see her son but was told that only her son's lawyer could meet with him. Judge Hobbs responded to this by saying that she was her son's lawyer and was then permitted to enter the interrogation room where her son was being held. Judge Hobbs and her son had a nineteen-minute conversation which was unrecorded due to its privileged nature. Judge Hobbs also stayed with her son while he was

interviewed by police, and at several points interjected to ask clarifying questions or to advise her son. At the end of the interview, Judge Hobbs asked the officers to release her son into her custody and expressed concerns about his safety because she had sentenced inmates in the same jail where he otherwise would be detained. The officers stated that it would be impossible to release her son into her custody due to the nature of the charges against him, but that they were aware of the potential safety issues. After leaving the police station, Judge Hobbs contacted the attorney who represented her son in his DUI matter, and he agreed to represent him again. Although Judge Hobbs's representation of her son ended at that point, Judge Hobbs's legal assistant attended, and sat at counsel table during, his first appearance.

After the Chief Judge of the Second Judicial Circuit learned that Judge Hobbs's son had been arrested, he contacted Judge Hobbs to arrange a meeting. During this meeting, Judge Hobbs explained that she had acted as her son's attorney on the night of his arrest, and the Chief Judge advised her to report herself to the JQC, which she did on the same day. The Chief Judge also explained to Judge Hobbs that he had viewed the video recording of

her son's first appearance and directed her to counsel her judicial assistant regarding the appearance of impropriety created by her presence at counsel table. He also suggested that Judge Hobbs take some time off, and she agreed to do so.

Before taking her leave of absence, Judge Hobbs attempted to arrange a visit with her son. Believing that in-person visitation was neither wise nor practical, the Court Administrator offered—with the approval of the Chief Judge—to help Judge Hobbs find a means of visiting her son. During this process, a program that would allow for video visitation was discussed, and Judge Hobbs asked the Court Administrator if he thought the visits would be recorded. Concerned by the question, the Court Administrator ceased assisting Judge Hobbs and alerted the Chief Judge as to what had happened. The record shows that after these events, which occurred on August 1 and 2, 2019, Judge Hobbs began communicating with her son using a different program, which is monitored and available to other members of the public.

On August 4, 2019, Judge Hobbs took her leave of absence. Before doing so, however, she failed to admonish her judicial assistant as directed by the Chief Judge. The next day, August 5,

2019, the judicial assistant attended a second hearing in Judge Hobbs's son's case and sat at counsel table for a second time.

Upon Judge Hobbs's return on August 12, both she and her judicial assistant were summoned to the Chief Judge's office for counseling. After the meeting, the Chief Judge told Judge Hobbs that she should counsel her judicial assistant. Judge Hobbs declined and asked the Chief Judge to do it for her, and he agreed.

During the counseling session between the Chief Judge and the judicial assistant, the judicial assistant made a series of remarks, including that the Chief Judge was only "pretend[ing] to be sensitive to Judge Hobbs," but then later "kick[ing] [her] in the butt." The Chief Judge told Judge Hobbs that he believed her judicial assistant's conduct during the meeting was grounds for termination. Judge Hobbs declined to terminate her judicial assistant but did counsel her on her conduct during the meeting.

On August 20, 2019, the mother of Judge Hobbs's grandson visited Judge Hobbs in her office at the Leon County Courthouse. Such visits were common and typically of a social nature because this individual worked in the public defender's office, which is in the same building as Judge Hobbs's chambers. However, this time,

the visitor brought a petition for injunction, which she had already completed and intended to file against the victim in the attempted murder case that was pending against Judge Hobbs's son. Judge Hobbs's judicial assistant accompanied the visitor to the clerk's office and showed her where the petition could be filed. While at the clerk's office, the judicial assistant also explained to the deputy clerk that the matter would need to be forwarded to a judge in the Third Judicial Circuit because of Judge Hobbs's personal connection with the case.

The last incident involving Judge Hobbs's judicial assistant related to Judge Hobbs's son occurred on October 3, 2019, while Judge Hobbs was in Orlando appearing before a JQC investigative committee. On October 3, Judge Hobbs's son, who was out on bail, came to Judge Hobbs's office looking for his grandfather's health insurance papers. Judge Hobbs's son stated that he believed the papers were in Judge Hobbs's office, which was in a secure part of the building. The judicial assistant then gave her all-access security badge to Judge Hobbs's son, who used the private elevator to access the restricted area, where he encountered an "unnerved" clerk who reported the incident. Upon her return, Judge Hobbs

learned of what happened and counseled her judicial assistant on the seriousness of her mistake—but allowed her to keep her job.

The rest of the charges stem from Judge Hobbs's handling of certain emergency matters in family law cases and her related interactions with a case manager.

Based on the events summarized above, the case proceeded to an evidentiary hearing on seven paragraphs of charges, which are detailed below. Judge Hobbs conceded guilt with respect to three charges pertaining to her actions on the night of her son's arrest, but she contested the remaining charges. The Hearing Panel found Judge Hobbs guilty of the three charges for which she had conceded guilt and another charge related to her failure to supervise her judicial assistant with respect to the judicial assistant's presence at counsel table, and for these violations, recommended the discipline set forth above.

In response to the JQC's argument that harsher discipline, potentially up to removal, is appropriate, Judge Hobbs urges the Court to approve the recommended discipline. Judge Hobbs also argues that the evidence does not support a finding of additional misconduct.

## ANALYSIS

In judicial disciplinary hearings, the charges and conclusions of the Hearing Panel must be supported by clear and convincing evidence. *In re LaMotte*, 341 So. 2d 513, 516 (Fla. 1977). Clear and convincing evidence is "a standard which requires more proof than a 'preponderance of the evidence' but . . . less than 'beyond and to the exclusion of a reasonable doubt.'" *In re Graziano*, 696 So. 2d 744, 753 (Fla. 1997) (quoting *In re Davey*, 645 So. 2d 398, 404 (Fla. 1994)). If the Hearing Panel's findings meet this standard of evidence, we will give them great weight. *Graziano*, 696 So. 2d at 753 (citing *LaMotte*, 341 So. 2d at 516). However, we "may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission." Art. V, § 12(c)(1), Fla. Const.

Our analysis begins with a review of the Hearing Panel's findings relating to the charges alleged in paragraphs 1-7 of the Amended Notice. We then address the recommended discipline.

### Charges 1-3

The charges alleged against Judge Hobbs in paragraphs 1-3 of the Amended Notice were as follows:

1. Your son was taken into police custody on or about the early morning hours of July 30, 2019 as a result of an incident that occurred in his residence, in which your son allegedly shot a female acquaintance multiple times through a closed door. Your son was taken to the Tallahassee Police Department (TPD) headquarters for an interview with police investigators. You came to TPD headquarters and asked to see your son. You were told by police that you would not be able to see your son unless you were representing him as his attorney. You then told police investigators that you were representing your son as his attorney.

2. Acting as your son's legal counsel, you requested and were permitted to consult with your son in the police interview room outside the presence of investigators and with the audio recording turned off. You were also able to be present with your son during his formal interview with investigators. During the interview, you participated by asking clarifying questions, and eventually telling your son to stop speaking.

3. At the time you represented your son, you were serving as a Circuit Judge in Leon County (Tallahassee), where you were assigned to preside over felony criminal cases. Your son's case has subsequently been assigned to the Third Judicial Circuit, and the Third Circuit State Attorney's Office has charged him with attempted second-degree murder. Your legal representation of your son violates Canons 1, 2, 5A(1), 5A(2), and 5G.[1]

---

1. Canon 1 requires a judge to uphold the integrity and independence of the judiciary. Canon 2 requires a judge to avoid impropriety and the appearance of impropriety in all of the judge's activities. Canons 5A(1) and (2) provide that "[a] judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; [or] (2) undermine the judge's independence, integrity, or impartiality." Canon 5G precludes a judge from

With respect to all three charges, Judge Hobbs conceded and the Hearing Panel found, that her representation of her son violated Canons 1, 2, 5A(1), 5A(2), and 5G of the Florida Code of Judicial Conduct. Judge Hobbs's admission that her conduct violated these canons satisfies the clear and convincing standard of evidence. *See In re Andrews*, 875 So. 2d 441, 442 (Fla. 2004) (explaining that a judge's admission of misconduct is clear and convincing evidence). Accordingly, we approve the Hearing Panel's findings with respect to these charges.

*Charge 4*

The fourth charge against Judge Hobbs was as follows:

4. In spite of being advised to avoid the appearance of preferential treatment, you later attempted to arrange unmonitored and unrecorded telephonic and/or video access to your son while he was in jail.[2]

With respect to this charge, we accept the Hearing Panel's finding that the evidence presented below falls short of the clear

---

practicing law, except for in limited circumstances not relevant here.

2. The Amended Notice does not specify which Canons of the Code of Judicial Conduct Judge Hobbs allegedly violated in this charge.

and convincing standard of proof. *See Davey*, 645 So. 2d at 404 (accepting, as supported by clear and convincing evidence, findings based on "direct, unequivocal, and consistent" testimony that was "logical and supported by written evidence" where the conflicting testimony was "vague, indecisive, and unsupported"). The evidence presented below was of a highly speculative nature and largely consisted of the Court Administrator's assumption that Judge Hobbs might be attempting to obtain preferential treatment in visiting her son. In contrast, the record shows that, with the exception of the events that occurred on the night of her son's arrest addressed in charges 1 through 3, Judge Hobbs visited her son just like any other member of the public and was monitored when doing so. Accordingly, we accept the Hearing Panel's finding with respect to this charge.

*Charge 5*

The fifth charge against Judge Hobbs consisted of two parts, as follows:

> 5. At the time your son was arrested on July 30, 2019, he had a misdemeanor Driving Under the Influence (DUI) case pending in Leon county court. Attorney Gary Roberts filed a Notice of Appearance on behalf of your son in that case on Oct. 4, 2018.

After accepting representation of your son in the DUI case, Mr. Roberts appeared before you on behalf of clients in two separate felony criminal matters:

> a. [In the first case,] . . . [o]n May 29, 2019, Mr. Roberts appeared before you, on behalf of [the defendant], at a Case Management Conference. The court records indicate that at this hearing you set a trial date for September 16, 2019. Shortly after the May hearing, on June 26, 2019, Mr. Roberts filed a motion to dismiss the charges. Mr. Robert's motion and proposed order were directed specifically to you, by name, as the presiding judge, however, prior to ruling on the motion you were transferred out of the criminal division on August 2, 2019, by amendment to Administrative Order 2018-04.

> b. [In the second case,] . . . [the defendant] was charged with the felony offense of organized scheme to defraud. She was also represented by Mr. Roberts, who appeared before you on June 10, 2019 for a Plea Hearing. During this hearing, it was announced that the State Attorney and the defendant had agreed to enter into a Deferred Prosecution Agreement (DPA). You set a new court date of July 10, 2019, to make sure the DPA had been signed. On August 2, 2019 you were transferred out of the criminal division by amendment to Administrative Order 2018-04.

Your failure to recuse yourself from criminal cases where the defendant's attorney of record was (at the same time)

also representing your son in a separate criminal matter was improper, and violates Canons 1, 2A, 3B(1), 3E(1).[3]

The Hearing Panel found Judge Hobbs not guilty for failing to recuse herself from these two cases based on its conclusion that her actions in the cases were de minimis. Because the alleged misconduct is based upon Judge Hobbs's failure to recuse herself, but the record does not clearly and convincingly establish that recusal was required in either case, we approve the Hearing Panel's finding. However, we note that we would have decided this issue differently had the alleged misconduct been Judge Hobbs's failure to *disclose* that the attorney appearing before her in the two cases at issue also represented her son. The commentary to Canon 3E(1) explains that even where a judge's disqualification is not automatically required, a judge "should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification even if

---

3. Canons 1 and 2 were addressed in note 1, *supra*. Canon 3B(1) provides that "[a] judge shall hear and decide matters assigned to the judge except those in which disqualification is required." Canon 3E(1) requires a judge to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

the judge believes there is no real basis for disqualification."

Moreover, where disqualification is required, the plain language of

the rule does not include a "de minimis" exception.

*Charge 6*

The sixth charge against Judge Hobbs alleged that she had

failed to appropriately supervise her judicial assistant in three

respects, as follows:

> 6. You have failed to appropriately supervise your
> Judicial Assistant (JA) in violation of Canons 1, 2, 3C(1),
> and 3C(2).[4]  To wit:
>
> > a. Your failure to adequately supervise has
> > allowed your JA to inappropriately interpose
> > herself in your son's pending criminal case and
> > violate security protocols.  For example:
> >
> > > i. Your JA was present at counsel
> > > table during a court hearing in your
> > > son's case.

---

4.  Canons 1 and 2 were addressed in note 1, *supra.*  Canon 3C(1) provides that "[a] judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business."  Canon 3C(2) provides that "[a] judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties."

ii. Your JA assisted the mother of your son's child with filing an injunction against the victim in your son's pending criminal case, during work hours.

iii. Your JA provided your son with her security badge, which permitted him access [to] secure and/or non-public parts of the courthouse.[5]

The Hearing Panel found that Judge Hobbs was guilty of charge 6(a)(i) related to her judicial assistant's appearance at counsel table, but not guilty of charge 6(a)(ii) related to her assistant's involvement with the filing of an injunction against the victim in the son's attempted murder case or charge 6(a)(iii) related to her judicial assistant's security badge.

Context is crucial for these charges. The evidence was both clear and convincing that Judge Hobbs's judicial assistant used her position of trust to preferentially promote the individual interests of the judge's family and did not appear to understand that her duty and our ethical rules required that she neither attempt to influence the outcome of the criminal charges pending against the judge's son

---

5. The Amended Notice lists these charges as 6(a)(i)-(iii), even though there is no charge 6(b).

nor grant a privilege or courtesy to him that would not be equally extended to any other criminal defendant. Judge Hobbs knew of the serious ethical breach by her judicial assistant and took no steps to counsel her, even after being directed by her chief judge to do so. Because of this failing, our rules appropriately hold Judge Hobbs responsible for all of the actions of her assistant that could have been avoided if she had taken appropriate action—which was her ethical obligation. *See In re Murphy*, 181 So. 3d 1169, 1177 (Fla. 2015) (explaining that the high ethical standard to which judges are held safeguards the public's confidence in the judiciary).

Regarding charge 6(a)(i), clear and convincing evidence supports the Hearing Panel's finding that Judge Hobbs failed to appropriately supervise her judicial assistant when Judge Hobbs failed to immediately admonish her judicial assistant regarding her presence at the first appearance in time to prevent the recurrence of the same conduct at a subsequent hearing. Although Judge Hobbs did not concede misconduct below, she no longer disputes the finding of guilt as to this charge and instead urges the Court to accept the Hearing Panel's findings and recommendations. *See In re Diaz*, 908 So. 2d 334, 337 (Fla. 2005) (explaining that when "the

JQC's findings are undisputed [the] Court will ordinarily conclude that the JQC's findings are supported by clear and convincing evidence") (citing *Andrews*, 875 So. 2d at 442).

Regarding charge 6(a)(ii), the record also supports the Hearing Panel's finding that Judge Hobbs is not guilty of misconduct related to the fact that her judicial assistant escorted a visitor to the clerk's office to file a petition for injunction. Judge Hobbs testified at the evidentiary hearing that when the visitor came to her chambers, she had already filled out the paperwork she planned to file. The only action Judge Hobbs's judicial assistant took was to accompany the visitor to the clerk's office and point out with which deputy clerk the visitor should file the paperwork. The court clerk testified below that she recalled no discussion with either Judge Hobbs or her judicial assistant regarding the petition for injunction. We agree with the Hearing Panel that these facts do not present clear and convincing evidence of misconduct. *Cf. In re Holloway*, 832 So. 2d 716, 728 (Fla. 2002) (explaining that a phone call to a detective by the judge did not amount to exploitation of judicial office because nothing improper was discussed on the call).

However, with respect to charge 6(a)(iii), the Hearing Panel wrongly concluded that there is not clear and convincing evidence to find Judge Hobbs guilty of misconduct based on her judicial assistant's actions regarding the security badge. The Hearing Panel based this finding on its conclusion that the judicial assistant's conduct was "so beyond the mainstream and improbable as to be unforeseeable by anyone."

We disagree with this reasoning. Although it may not have occurred to Judge Hobbs that her judicial assistant would improperly prefer her son, then a criminal defendant, in this particular way, it was certainly foreseeable that her assistant's failure to understand her own ethical obligations could result in other similar ethical breaches involving the judge's son. The record clearly demonstrates a lack of perspective, sense of propriety, and professional judgment by the judicial assistant where Judge Hobbs's son is concerned. Further, the record shows that Judge Hobbs was well aware of these problems and failed in her obligation to properly supervise her judicial assistant. Under these circumstances, it is appropriate to hold Judge Hobbs accountable

for her own failure to supervise, even if the specific preference given to her son may have seemed improbable before it occurred.

*Charge 7*

The seventh charge against Judge Hobbs consisted of four parts, as follows:

> 7. It is also alleged that you have failed to issue timely orders and decisions on certain emergency matters in violation of Canons 1, 2, and 3B(8)[6]:
>
> a. In [the first case,] an emergency motion was filed in a paternity case on September 19, 2019 and an expedited motion was filed on September 20, 2019. As of October 21, 2019, you had not issued an order determining whether or not the motions qualify as emergencies.
>
> b. In [the second case], an emergency petition for temporary custody was filed August 29, 2019, and no determination had been made as of October 21, 2019.
>
> c. In [the third case,] [y]ou determined that the matter was an emergency and court staff contacted your JA to schedule the matter for an emergency hearing. This occurred on August 21, 2019. Court staff reported that your JA refused to schedule the matter, stating, "I don't have time for this shit," and

---

6. Canons 1 and 2 were addressed in note 1, *supra*. Canon 3B(8) requires a judge to "dispose of all judicial matters promptly, efficiently, and fairly."

- 20 -

explaining that she was not going to look up or contact the petitioner to obtain addresses for all parties in order to set a hearing. The JA indicated to staff that she would have you review this again and deem it a non-emergency for referral to a magistrate. Subsequently, the same emergency motion was filed again with a stamp indicating that it was not an emergency.

d. After receiving the Commission's Amended Notice of Investigation outlining the allegations in paragraph 7(a)-(c), you summoned a case manager to your chambers and interrogated her about the source of the Commission's information.

The Hearing Panel found that the evidence presented against Judge Hobbs with respect to these charges did not clearly and convincingly establish violations of the Code of Judicial Conduct, as Judge Hobbs "was not seeking the source of the investigative charges, and was actually trying to determine what was happening in these cases." We acknowledge the closeness of these issues, particularly as they largely implicate additional questionable conduct by Judge Hobbs's judicial assistant caused by Judge Hobbs's failure to supervise her. However, given the superior vantage point of the Hearing Panel in evaluating the testimony and weighing the evidence related to these charges, we accept its finding

- 21 -

that Judge Hobbs is not guilty of any of the misconduct alleged in paragraph 7.

*Discipline*

Having analyzed the Hearing Panel's findings and conclusions, we now review its recommended discipline. Although the Court "gives the findings and recommendations of the JQC great weight," *In re Kinsey*, 842 So. 2d 77, 85 (Fla. 2003), "the ultimate power and responsibility in making a determination rests with [the] Court," *LaMotte*, 341 So. 2d at 516.

In urging us to impose a harsher sanction than the Hearing Panel's recommended discipline, the JQC suggests that Judge Hobbs's misconduct demonstrates unfitness to hold judicial office that warrants removal. We disagree. Removal is the most severe form of discipline a judge may face, and it is typically reserved for when a judge intentionally commits "serious and grievous wrongs of a clearly unredeeming nature." *Id.* at 517; *see, e.g., In re McMillan*, 797 So. 2d 560, 566-67, 572-73 (Fla. 2001) (removing a judge for violating the "fundamental principles of judicial ethics" when he explicitly and implicitly stated that he would show favor to certain groups and made false and disparaging comments about his

opponent in the race for the judgeship); *Graziano*, 696 So. 2d at 746-47 (removing a judge with a history of prior discipline when she used her office for personal gain and interfered with courthouse operations); *In re Henson*, 913 So. 2d 579, 594 (Fla. 2005) (removing a judge who agreed to represent a client while a sitting judge and then for advising that client to flee the country in order to evade justice); *In re Hawkins*, 151 So. 3d 1200, 1213 (Fla. 2014) (removing a judge who was found guilty of evading taxes, exploiting her judicial office to promote her business, and making false and misleading statements during a deposition while being investigated for judicial misconduct).

However, we do agree with the JQC that the recommended discipline is insufficient. Although we are not unsympathetic to Judge Hobbs's family situation, her violations of the Code of Judicial Conduct demonstrate a failure of judgment and a lack of appropriate boundaries between her judicial office and her personal life that cannot be tolerated in members of our judiciary. *See In re Frank*, 753 So. 2d 1228, 1241 (Fla. 2000) ("[A] 'judge is a judge 7 days a week, 24 hours a day.' " (quoting JQC's findings)).

Our constitution affords us great leeway in determining the appropriate discipline, *see* art. V, § 12, Fla. Const., and we have previously imposed fines in addition to suspensions in other cases where serious misconduct warranted "something less than removal from office." *In re Rodriguez*, 829 So. 2d 857, 861 (Fla. 2002); *see also* James R. Wolf, *Judicial Discipline in Florida: The Cost of Misconduct*, 30 Nova L. Rev. 349, 391 (2006) ("Suspension and fines are imposed in those tough cases where the misconduct is serious but where the standards for removal have not been met.").

As Judge Hobbs's misconduct goes to the heart of the public's ability to trust Florida's judges to separate their personal lives and relationships from their official duties, in addition to imposing the Hearing Panel's recommended discipline, we order Judge Hobbs to pay a fine of $30,000.

## CONCLUSION

We approve the findings of misconduct made by the Hearing Panel. Additionally, contrary to the Hearing Panel's finding, we further conclude that clear and convincing evidence establishes that Judge Hobbs failed to properly supervise her judicial assistant, which resulted in the judge's son improperly accessing restricted

areas of the courthouse while serious criminal charges were pending against him.

Regarding discipline, in light of the serious nature of the misconduct at issue, we add a fine to the Hearing Panel's recommendation. Specifically, Judge Hobbs is suspended for sixty days without pay and ordered to pay a fine of $30,000. The fine shall be paid to the Office of the State Courts Administrator within 180 days from the issuance of this opinion. The effective date of the suspension shall be on a date within thirty days of the issuance of this opinion as determined by the Chief Judge of the Second Judicial Circuit. Once the effective date of the suspension is determined, the Court Administrator for the Second Judicial Circuit shall submit a personnel action request (PAR) form to the Personnel Office of the Office of the State Courts Administrator for processing. We further order Judge Hobbs to attend an employee management program to be completed within one year of the date of the issuance of this opinion. We also command Judge Hobbs to appear before this Court for the administration of a public reprimand at a time to be set by the Clerk of this Court.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Honorable Michelle Morley, Chair, and Alexander J. Williams, General Counsel, Judicial Qualifications Commission, Tallahassee, Florida; and Lauri Waldman Ross of Ross & Girten, Counsel to the Hearing Panel of the Judicial Qualifications Commission, Miami, Florida,

    for Florida Judicial Qualifications Commission, Petitioner

Roosevelt Randolph and Errol H. Powell of Knowles & Randolph, P.A., Tallahassee, Florida,

    for Judge Barbara Kaye Hobbs, Respondent