646 So.2d 191 (1994)
In re Inquiry Concerning a Judge No. 93-145, Robert J. FOGAN.
No. 82247.
Supreme Court of Florida.
December 1, 1994.
Joseph J. Reiter, Chairman and Ford L. Thompson, Gen. Counsel, FL Judicial Qualifications Com'n, Tallahassee, and Glenn J. Waldman, Waldman, Feluren & Ferrer, P.A., Sp. Counsel, North Miami Beach, for petitioner.
Susan F. Delegal and John Booth, Holland and Knight, and J. David Bogenschutz, Bogenschutz & Dutko, Fort Lauderdale, for respondent.
PER CURIAM.
We have for review a recommendation of the Judicial Qualifications Commission (Commission) that Judge Robert J. Fogan be publicly reprimanded for writing a character reference letter on his official court stationery for a personal friend who was to be sentenced in federal court. We have jurisdiction, art. V, § 12(f), Fla. Const., and, based upon our review of the record and assessment of the judge's conduct, we impose a public reprimand.
On August 26, 1993, the Judicial Qualifications Commission formally charged that Judge Fogan, a Circuit Judge for the Seventeenth Judicial Circuit since 1988, wrote a character reference letter for Emerson Allsworth,[1] a friend who was awaiting sentencing in federal court. After a trial, the Commission concluded that Judge Fogan should be found guilty of violating Judicial Canon 1 ("A judge should uphold the integrity and independence of the judiciary by observing high standards of conduct"); and Canon 2 ("A judge should avoid impropriety and the appearance of impropriety in all his activities"). The Commission found that Judge Fogan violated two separate provisions of Canon 2B: (1) voluntarily testifying as a character *192 witness; and (2) lending the prestige of his office to advance the private interests of others.
We have repeatedly held that "[t]he findings and recommendations of the Judicial Qualifications Commission are of persuasive force and should be given great weight. However, the ultimate power and responsibility in making a determination rests with this Court." In re LaMotte, 341 So.2d 513, 516 (Fla. 1977). Before reporting findings of fact to this Court, the Commission must conclude that they are established by clear and convincing evidence. Id. It is this Court's initial responsibility to review the Commission's findings and ascertain whether they are supported by clear and convincing evidence. See id.
It is undisputed that Judge Fogan wrote a letter on behalf of Allsworth. However, a key issue before the Commission was whether a federal probation officer requested the letter from Judge Fogan. The Commission concluded that the probation officer did not and, based upon our review of the record, we find that such conclusion is supported by clear and convincing evidence. From the record, it appears that Allsworth initiated the request of the letters from Judge Fogan and other judges, and the probation officer simply agreed that Allsworth could secure such letters if he wished. Therefore, we hold that the Commission acted within its fact-finding authority in concluding that Judge Fogan did not respond to a "request."
Judge Fogan also argues that, even if his letter was not in response to a request, he was not testifying by writing the letter because it was not under oath or affirmation. We disagree. Opinion 75-6 of the Committee on Standards of Conduct Governing Judges (Advisory Committee) involved circumstances very similar to those involved herein.[2] That Opinion is set out in an appendix to the specially concurring opinion in The Florida Bar v. Prior, 330 So.2d 697 (Fla. 1976). The Opinion states that Canon 2B "is sufficiently broad to encompass written statements voluntarily submitted with the knowledge and understanding that such statements may be used directly or indirectly in some adjudicatory proceeding." Under Opinion 75-6 and the facts found by the Commission, Judge Fogan clearly should have known that he was writing a letter that would be used in a federal sentencing hearing.
Next we address whether, as the Commission concluded, Judge Fogan lent the prestige of his office to advance the private interests of another. Again, Opinion 75-6 of the Advisory Committee bears directly on this issue. It states that a "written statement bearing upon the character of an individual involved either in a civil, criminal, or administrative proceeding would result in injecting the prestige of the judge's office into that proceeding to the same extent as if he voluntarily appeared at such proceeding and testified." Judge Fogan's own admissions also support the Commission's findings on this point. Judge Fogan acknowledged on multiple occasions during the trial that he lent the prestige of his Circuit Court office to advance the private interests of Emerson Allsworth. Therefore, we approve the Commission's finding that Judge Fogan violated the first provision in Canon 2B.
In Opinion 75-6, the Advisory Committee also distinguishes between "information" and a character reference letter. In The Florida Bar v. Prior, several circuit judges wrote letters for an attorney to oppose his suspension by the Florida Supreme Court until his appeal on five counts of tax evasion was disposed of in federal court. The advisory opinion in Prior examined the nature of the letters, the purpose they were intended to serve, and the circumstances under which they were signed, to determine whether they violated the "spirit and intent" of Canon 2B. After quoting several excerpts from the letters, the Opinion concluded that:

*193 [T]he nature of these letters and the purpose they were intended to serve clearly indicates they were character reference letters and under the circumstances which they were signed and tendered to the Supreme Court, violated the spirit and intent of Canon 2(B), ... i.e., `a Judge ... should not testify voluntarily as a character witness... .'
Opinion 75-6, at 2. In the case sub judice, Fogan's letter cannot be distinguished from the letters referred to in Opinion 75-6.
We do agree with Judge Fogan that there has been some confusion as to when a judge may write a character reference letter and when a judge may use official court stationery. In fact, we recognized this confusion in our recent adoption of the new Code of Judicial Conduct:
The Standards of Conduct Committee has supplemented its initial petition and has directed our attention to an asserted conflict between the proposed Canon 2B and recent decisions of this Court. Specifically, the Committee has questioned whether and under what circumstances a judge may write a character reference letter and under what circumstances a judge may use official court letterhead. The confusion over these issues was caused in part by our approval of the language used in the stipulation of fact and discipline in In re Judge Abel, 632 So.2d 600 (Fla. 1994). Although we believe that the proposed Canon 2B sufficiently addresses the issues raised by the Committee, we have added the following underscored language to the commentary regarding judicial letterhead: "Similarly, judicial letterhead must not be used for conducting a judge's personal business, although a judge may use judicial letterhead to write character reference letters when such letters are otherwise permitted under this Code." We note that, in some instances, bar admission authorities and law schools solicit recommendations from judges. If it is appropriate to send such a letter or to file a report, we find that a judge may use stationery that reflects the judge's office. We stress, however, that judicial letterhead must not be used for personal business. We find that the Committee on Standards of Judicial Conduct opinions 75-18, 75-22, 77-17, 79-3, 88-19, 92-2, 92-30, and 93-1 are proper interpretations of the Canon.
In re Code of Judicial Conduct, 643 So.2d 1037 (Fla. 1994). The revised commentary to Canon 2B states, in pertinent part:
Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities... . [J]udicial letterhead must not be used for conducting a judge's personal business, although a judge may use judicial letterhead to write character reference letters when such letters are otherwise permitted under this Code.
....
Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request.
....
A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.
643 So.2d at 1044. We hope that we have clarified this area of judicial ethics by our recent revision of the Code of Judicial Conduct.
*194 Notwithstanding the general confusion over the writing of character reference letters, we believe that, under the plain language of the Code of Judicial Conduct and the numerous advisory opinions on the issue,[3] Judge Fogan should have known that it was impermissible to write a character reference letter to a judge presiding over his friend's sentencing hearing.
While we find a reprimand appropriate here, we acknowledge that Judge Fogan's letter, standing alone, constitutes no major act of judicial misconduct. Judge Fogan said some nice things about a friend. These things are, no doubt, also things that a sentencing judge may like to know, especially when they come from another judge. But therein lies the danger that the Canons seek to curb. When a judge is summoned to testify, a judge is obligated, like everyone else, to comply. However, judges must not act on their own initiative, especially in judicial proceedings, to lend the prestige of their office for the private benefit of another. This practice and its appearance undermines the very prestige and respect that is being traded upon and, inevitably, erodes public confidence in the judiciary.
Based on the foregoing, we find a public reprimand appropriate discipline under the facts of this case, and hereby reprimand Judge Robert J. Fogan for the actions noted above.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Judge Fogan has known Emerson Allsworth, a Fort Lauderdale attorney, for approximately thirty years. Mr. Allsworth was charged with several counts of money-laundering and tax evasion by the U.S. Government. Mr. Allsworth requested the character reference letter for use at his sentencing hearing.
[2] We have been guided, to some extent, with respect to character reference letters by opinions issued by the Committee on Standards of Conduct Governing Judges. However, we are mindful that Advisory Committee opinions are only advisory in nature and no opinion binds the Commission or this Court. An opinion of the Advisory Committee may, however, in the discretion of the Commission, be considered as evidence of a good faith effort to comply with the Code of Judicial Conduct.
[3] Canon 2B specifically states that a judge "should not testify voluntarily as a character witness." See, e.g., Opinion 77-17 of the Advisory Committee (holding that judge may not voluntarily write letter to Parole and Probation Commission, identifying himself as County Judge, and recommending parole for inmate). As noted in Opinion 75-6, the prohibition of Canon 2B is "limited to investigatory or adjudicatory proceedings either of an administrative, civil, or criminal nature where a person's legal rights, duties, privileges or immunities are ultimately determined."

Opinion 75-22 carves out an exception to Canon 2B. It holds that "the furnishing of information pursuant to a request by a Florida Parole and Probation Officer, under the auspices of a judicial officer is permissible, and is not considered as `testifying voluntarily as a character witness.'" (emphasis added). Opinion 75-18 broadens this holding to include any probation official. It states that the "furnishing of information pursuant to a request by a probation official under the auspices of a judicial officer is not considered testifying voluntarily." Opinion 82-15 generalizes this exception. It states that "there is no prohibition against judges furnishing information in response to official inquiry." See, e.g., Opinion 77-10 (holding it proper for judge to respond to inquiry from United States Army Judge Advocate to write letter regarding qualifications of attorney in judge's circuit who is applying to Corps). Compare Opinion 82-15 (holding that judge may not voluntarily write letter of recommendation to Clemency Board and Board of Bar Examiners for individual seeking pardon and admission to Bar Exam) with Opinion 79-3 (holding that there was no impropriety in judge recommending person for entrance into law school) and Opinion 75-18 (holding it proper to write reference letter on behalf of person seeking private employment and proper to write letter regarding background and character of someone applying for admission to bar).