692 So.2d 1019 (1997)
In re Judge Frank A. MARULLO, Jr.
No. 96-0-2222.
Supreme Court of Louisiana.
April 8, 1997.
Steven Robert Scheckman, New Orleans, Timothy J. Palmatier, Metairie, for applicant.
Michael Seth Fawer, Smith, Jones & Fawer, New Orleans, for respondent.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
KIMBALL, Justice.[*]
This matter comes before the court on the recommendation of the Judiciary Commission *1020 of Louisiana that Respondent, Judge Frank A. Marullo, Jr., of the Criminal District Court for the Parish of Orleans, State of Louisiana, be publicly censured and ordered to reimburse to the Judiciary Commission the costs incurred in the investigation and prosecution of this case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and law, and determined that Respondent violated Canon 2 B of the Code of Judicial Conduct and engaged in public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La. Const. art. V., § 25(C). After reviewing the record before us, we find that Respondent violated Canon 2 B of the Code of Judicial Conduct; however, we conclude the violation does not rise to the level of sanctionable misconduct subject to punishment through the formal disciplinary process.

FACTS AND PROCEDURAL HISTORY
On February 13, 1996, Respondent wrote a letter on his official stationery to the Honorable Edith Brown Clement, Judge of the United States District Court for the Eastern District of Louisiana. This letter concerned the sentencing of Anthony Carollo, a man who had pled guilty in Judge Clement's court to a conspiracy involving an illegal video poker operation. Respondent has known Carollo for more than twenty-five years, and testified that he consistently patronized Carollo's restaurant since his days in law school. Based on this acquaintance, Respondent stated in his letter to Judge Clement that Carollo is a generous, loving man who is a good father. Respondent also stated:
[a]ny considerations that can be given to this kind and gentle man will be greatly appreciated. I know sentencing is a very difficult thing to do, but Mr. Carollo is not a young man and he is in failing health, and I am sure he wouldn't pose any risks at all to society.
The letter was solicited by Carollo's attorney, Arthur Lemann. Respondent wrote the letter and gave it to Lemann for delivery to Judge Clement. According to Respondent, he wrote the letter in an attempt to avoid being subpoenaed to appear in open court and believed only Judge Clement would be privy to the information contained in the letter. However, a copy of the letter was published in the Times-Picayune. Prior to Carollo's sentencing, but after Respondent wrote the letter, Respondent was subpoenaed by Lemann to appear at Carollo's sentencing hearing; however, the letter was used in lieu of Respondent's testimony.
On April 2, 1996, the Judiciary Commission filed a Formal Charge against Respondent alleging that he violated Canon 2 B[1] of the Code of Judicial Conduct, and engaged in willful misconduct related to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. On July 13, 1996, the Judiciary Commission conducted a hearing on this matter. The Judiciary Commission concluded that Respondent violated Canon 2 B of the Code of Judicial Conduct and that his action constituted public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, the Judiciary Commission concluded that Respondent's writing of the one letter was not persistent conduct. As a result of this finding, the Judiciary Commission recommended that this court publicly censure Respondent pursuant to La. Const. art. V., § 25(C), and order Respondent to reimburse the Commission the costs incurred in the investigation and prosecution of the case, in the amount of $580.00, pursuant to La. S.Ct.R. 23, § 22.

*1021 LAW AND DISCUSSION
This court has original jurisdiction in judicial disciplinary proceedings. La. Const. art. V., § 25(C). Therefore, this court has the power to make original determinations of fact based upon the evidence in the record and is not bound by the findings and recommendations of the Judiciary Commission. The grounds for disciplinary action against a judge are set forth in La. Const. art. V., § 25(C), which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
Under its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976. This Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as the basis for the disciplinary action provided for by La. Const. art. V., § 25(C). In re Decuir, 95-0056 p. 7 (La.5/22/95), 654 So.2d 687, 692; In re Wilkes, 403 So.2d 35, 40 (La.1981); In re Babineaux, 346 So.2d 676, 680-81(La.), cert. denied sub nom. Berry v. Judiciary Commission of Louisiana, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977). A violation of the Code of Judicial Conduct must be proven by clear and convincing evidence. In re Huckaby, 95-0041 p. 6 (La.5/22/95), 656 So.2d 292, 296.
Violation of Canon 2 B
The basis for the complaint against Respondent is that he used the efficacy of judicial office for another's gain by writing the letter in dispute on official court stationery which identified him as a Judge of the Criminal District Court for the Parish of Orleans, State of Louisiana. At the time Respondent wrote the letter, Canon 2 B of the Code of Judicial Conduct did not contain a specific provision which prohibited writing this type of letter on official court stationery. In fact, Canon 2 B was amended to clarify the confusion concerning the propriety of judges writing these types of letters.[2] Respondent's conduct clearly violates the current version of Canon 2 B of the Code of Judicial Conduct.[3] However, the only issue presented by this case is whether Respondent violated Canon 2 B as it existed before the recent amendment.
*1022 At the time Respondent wrote the letter, the propriety of judges writing letters of recommendation or letters regarding convicted felons was less than clear. There were three advisory opinions prepared by the Supreme Court Committee on Judicial Ethics and one Louisiana Supreme Court case dealing with this exact issue. In Opinion No. 64, dated in December 1984, a majority of the Supreme Court Committee on Judicial Ethics stated that while a judge in his private capacity may write a letter to the Louisiana Board of Pardons recommending an individual be granted commutation of sentence, he may not ethically use his official stationery. In Opinion No. 76, dated September 25, 1989, the Supreme Court Committee on Judicial Ethics concluded that a judge may write a letter of recommendation on his personal stationery. Finally, in Opinion No. 102, dated May 7, 1992, the Supreme Court Committee on Judicial Ethics stated that it is ethically impermissible for a judge to write a letter of recommendation on official stationery. While these opinions are not the law, and were not universally circulated to the judiciary, they do serve as advisory opinions which help members of the judiciary determine the types of conduct which may be ethically impermissible under the Code of Judicial Conduct. Based on these standards, at the time of Respondent's action, a letter could be written on a convicted felon's behalfif it was written on personal stationery.
In addition to these advisory opinions, this court in 1995 publicly censured a judge, in part, for conduct similar to that engaged in by Respondent. In re Decuir, 95-0056 (La.5/22/95), 654 So.2d 687. The Decuir case involved the imposition of public censure upon a judge for the following offenses, only one of which bears similarity to the instant case: (1) allowing a former law partner to share the court of appeal's secretary, telephone system, post office box, office supplies, and law library; (2) failing to properly supervise and report campaign contributions on his Campaign Finance Report; (3) allowing his law clerk to work as an independent contractor for a law firm and research a case in which the clerk's firm was involved; and (4) writing a letter on temporary personal judiciary stationery that identified him as a court of appeal judge to a federal district judge concerning the sentencing of a friend, who was a criminal defendant, in a criminal case. For these violations, this court, speaking through Justice Victory, determined "the violations are serious enough to merit the most lenient type of discipline by the Court," and ordered censure of Judge Decuir in a public opinion. Id. at p. 10, 654 So.2d at 693.
Respondent maintains he was not aware he was violating Canon 2 B of the Code of Judicial Conduct when he wrote the letter to Judge Clement. While it is true that Canon 2 B, prior to its recent amendment, was unclear as to what was and was not ethically permissible,[4] the existence of three advisory opinions composed by the Supreme Court Committee on Judicial Ethics and the Decuir decision conveyed the fact that it was ethically impermissible under Canon 2 B to write the letter on official stationery. In addition, we note the Florida State Supreme Court faced this same issue in In re Fogan, 646 So.2d 191 (Fla.1994). In Fogan, the sole charge levied against Judge Fogan concerned the writing of a character reference letter, on his official stationery, for a friend who was awaiting sentencing in federal court. The Florida Supreme Court held that while there may be general confusion over the writing of character reference letters, the numerous advisory opinions on the issue should have alerted Judge Fogan that it was ethically impermissible under Canon 2 B to write a character reference letter to a judge presiding over his friend's sentencing hearing. Fogan, 646 So.2d at 194.[5]
Based upon the foregoing, we find by clear and convincing evidence that Respondent did violate Canon 2 B of the Code of Judicial Conduct by writing the character reference letter on his official stationery. Having found an ethical violation, we must assess *1023 whether the conduct rises to the level of sanctionable misconduct under our law.
Sanctions
Initially, we recognize the primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline a judge. Leslie W. Abramson, Canon 2 of the Code of Judicial Conduct, 79 Marq.L.Rev., 950, 951 (1996). As ministers of justice entrusted with the duty to preserve the integrity of the bench for the benefit of the public, the judges of this State should conduct themselves in a manner above reproach and suspicion. Huckaby, 95-0041 p. 10, 656 So.2d at 298. While the public cannot expect their judges to be completely without fault, in order to protect and earn the public trust, judges must be accountable for all their actions. Harold T. Kelly, Jr., Hart Failure: The Supreme Judicial Court's Interpretation of Nonjudicial Demeanor, 44 Me.L.Rev., 175, 177 (1992). However, all violations of the Canons of the Code of Judicial Conduct do not always rise to the level of sanctionable misconduct. In re Hart, 577 A.2d 351 (Me. 1990). Indeed, La. Const. art. V., § 25(C) provides this court with the power to determine whether formal discipline is warranted for a violation of a Canon of the Code of Judicial Conduct. In this case, Respondent is charged with a violation of one Canon of the Code of Judicial Conduct. Unquestionably, under the current version of Canon 2 B, Respondent's actions clearly would violate the letter of the Code. However, we find that at the time Respondent wrote the letter at issue, it did not violate the Code of Judicial Conduct to actually write the letter. Rather, Respondent's violation stemmed from writing the letter on official stationery instead of personal stationery.[6] While we certainly do not condone the conduct herein complained of, we recognize that sanctionable misconduct "is more than that conduct which comes about by reason of error of judgment or lack of diligence." State ex rel. Gremillion v. O'Hara, 252 La. 540, 211 So.2d 641 (1968). Considering the confounded state of ethics law in this area at the time of Respondent's action, which apparently led to a detailed revision of Canon 2 B,[7] together with the facts and circumstances of this case, we find the prospect of censure on the instant violation when compared with the Decuir case, in which the respondent stipulated to no less than four ethical offenses, would be a disproportionate sanction.
In addition, over a twenty-two year judicial career, Respondent has never been the subject of official disciplinary proceedings before now. We also find it significant that Respondent did not write the letter for personal gain; rather, the record reflects he acted in good faith to provide information he believed his acquaintance was entitled to under law. While good faith is not an affirmative defense to a Canon violation, it is a mitigating factor which militates in favor of a lesser sanction. In re Chaisson, 549 So.2d 259, 267 (La.1989).
La. Const. art. V., § 25(C) provides four punishment alternatives for disciplining a judge. This court may: (1) censure; (2) suspend the judge with or without salary; (3) remove the judge from office; or (4) retire the judge involuntarily. The punishment imposed depends upon the seriousness of the violation and the presence of mitigating factors. Censure is the most lenient form of discipline which may be imposed by this court. Decuir, p. 10, 654 So.2d at 693. As mentioned previously, in Decuir, this court censured Judge Decuir for three other violations in addition to his writing of a letter of recommendation on his temporary judicial stationery. In this case, Respondent is only charged with an isolated and technical violation of the Code of Judicial Conduct, a blemish on an otherwise clean professional slate.
We do not find that official judicial discipline is warranted in this case considering the totality of the circumstances surrounding *1024 the writing of this letter,[8] the fact Canon 2 B of the Code of Judicial Conduct was unclear as it existed at the time the letter was written, and the fact this was an isolated transgression.

DECREE
The recommendation of the Judiciary Commission of Louisiana is hereby rejected; no official discipline imposed.
VICTORY, J., dissents and assigns reasons.
VICTORY, Justice, dissenting.
The majority finds that although Respondent violated Canon 2 B of the Code of Judicial Conduct, the violation did not rise to the level of sanctionable misconduct. Because I believe Respondent's conduct and the consequences which flowed therefrom warrant formal disciplinary action, I respectfully dissent from the majority's opinion and agree with the Judiciary Commission of Louisiana that Respondent should be publicly censured.
As the majority notes, Respondent has been a judge for over twenty-two years and has never previously been the subject of official disciplinary proceedings. Under other circumstances, censure may not have been warranted. However, Respondent's conduct resulted in wide-spread publicity calling into question the integrity of the judiciary and even became the subject of negative advertising in his re-election campaign.
Further, I cannot agree with the majority's characterization of Respondent's actions as only a "technical" violation of the Code of Judicial Conduct. In my view, Respondent's ethical conduct was serious, diminished the prestige of the judiciary, and will tend to undermine the public's confidence in the judicial process. Unfortunately, the Court's failure to discipline Respondent for his conduct will have the same effect.
NOTES
[*] Judge Graydon K. Kitchens, Jr., 26th Judicial District Court, and Judge Ian W. Claiborne, 18th Judicial District Court, participating as associate justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich. Kitchens, J., ad hoc, recused, not on panel. Rule IV, Part 2, § 3.
[1] At the time Respondent wrote the letter, Canon 2 B provided:

A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of judicial office to advance the private interest of others; nor should a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.
[2] Canon 2 B of the Code of Judicial Conduct was amended effective July 8, 1996 to provide:

A judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness. Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. Letters of recommendation may be written only on private stationery which does not contain any official designation of the judge's court, but the judge may use his or her title. A judge shall not initiate the communication of information in any court or disciplinary proceeding, but may provide such information for the record in response to a formal request by a court or disciplinary agency official.
[3] In addition to the revision clarifying the impropriety of using the official court designation in letters of recommendation, the revised Canon 2 B reaffirms the prohibition of judges testifying voluntarily as character witnesses, and explicitly condemns initiating the communication of information in any court or disciplinary proceeding unless such is requested by a court or disciplinary agency in ordinary course.
[4] See, supra, note 2 and accompanying text (quoting revised Canon 2 B, which clearly provides in part, "Letters of recommendation may be written only on private stationery which does not contain any official designation of the judge's court, but the judge may use his or her title.").
[5] See also In re Ward, 654 So.2d 549 (Fla.1995).
[6] We neither excuse nor encourage the practice of judges lending their support in correspondence, privately or publicly, to convicted felons. However, we do not ignore that it has been common practice in this State for such requests to be made. For instance, the record in this case indicates that two other Criminal District Court judges reportedly issued letters to Judge Clement similar to Respondent's.
[7] See, supra, notes 2 & 4 and accompanying text.
[8] Respondent did not seek out the opportunity to write a letter on behalf of Carollo; rather, he provided information he believed Carollo was entitled to at the request of Carollo's attorney.