FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #036

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2016**, are as follows:

**BY WEIMER, J.**:

2015-O -2096     IN RE:  JUDGE JAMES J. BEST EIGHTEENTH JUDICIAL DISTRICT COURT
                 PARISHES OF IBERVILLE, POINTE COUPEE, AND WEST BATON ROUGE STATE
                 OF LOUISIANA

                 For the reasons assigned, it is ordered that Judge James J. Best
                 be suspended from office without pay for fifteen days.  It is
                 further ordered that Judge James J. Best reimburse the Judiciary
                 Commission of Louisiana $1,610.71 in costs.

                 JOHNSON, C.J., concurs in part and dissents in part.
                 GUIDRY, J., concurs in part and dissents in part for the reasons
                 assigned by Chief Justice Johnson.
                 CRICHTON, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2015-O-2096

## IN RE: JUDGE JAMES J. BEST, EIGHTEENTH JUDICIAL DISTRICT COURT, PARISHES OF IBERVILLE, POINTE COUPEE, AND WEST BATON ROUGE, STATE OF LOUISIANA

*JUDICIARY COMMISSION OF LOUISIANA*

**WEIMER**, Justice.

This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (Commission), pursuant to La. Const. art. V, § 25(C), that James J. Best, a judge for the Eighteenth Judicial District, Parishes of Iberville, Pointe Coupee, and West Baton Rouge, committed misconduct and should be suspended for thirty days and ordered to reimburse the costs incurred in the Commission's investigation and prosecution of this case. Judge Best did not contest the recommendation and, along with the Commission, filed a joint motion urging this court to accept and implement the recommendation as a consent discipline. This court rejected the joint motion and docketed the case for a full evaluation of the record. The court was particularly interested in ascertaining whether there was sufficient evidence to support the Commission's finding that Judge Best acted without actual bias or prejudice when improperly terminating the probation of an individual. Judge Best had stipulated to investigating the probationer's background through *ex parte* communications and stipulated he adjudicated the matter without the participation of the prosecuting agency. Additionally, docketing was believed to be necessary to make

a fully informed sanction determination. After a thorough review of the facts and law in this matter, we find a fifteen-day suspension, without pay, and reimbursement of costs to be an appropriate sanction.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Except as relates to the question of whether Judge Best acted with actual bias or prejudice, the salient facts in this matter have either been jointly stipulated by the Office of Special Counsel (OSC) and by Judge Best, or admitted by Judge Best in testimony before the Commission.

This matter concerns Judge Best's handling of a motion to terminate the probation of Antonio Garcia. In June 2009, based on having exchanged a series of lewd and lascivious texts and emails with a sixteen-year-old student at the school where Mr. Garcia taught, Mr. Garcia plead guilty to indecent behavior with a juvenile and was sentenced to five years of active supervised probation. Mr. Garcia's prosecution was handled by the Attorney General's office because the District Attorney's office recused itself.

On May 17, 2011, a little less than two years into his five-year probation, Mr. Garcia, without the assistance of an attorney, filed a motion to terminate probation. The Attorney General's office did not receive a copy of the motion. The motion to terminate probation did not include an order or rule to show cause by which the matter could be set for hearing.

At some point after Mr. Garcia's sentencing, Judge Best had become personally acquainted with Mr. Garcia through their mutual involvement with the church they both attend, as well as through Judge Best's work as the director of the church choir and Mr. Garcia's membership in the choir. When Mr. Garcia filed his motion to terminate probation, Judge Best told him, outside of court and through their social

2

connection, that he had received the motion and that it could not be set for hearing without an order to that effect. Judge Best told Mr. Garcia that he should seek legal advice and then provided him with the names of several attorneys who could possibly assist him, including the name of David Marquette, an attorney with whom Judge Best shared a close social relationship.

After receiving the motion filed by Mr. Garcia, Judge Best engaged in *ex parte* communications with Mr. Garcia's probation officer concerning the merits of the motion that were designed to influence his judicial action. Judge Best asked the probation officer to contact the victim's family to find out the family's position regarding the proposed early termination of Mr. Garcia's probation. When the probation officer informed Judge Best of the opposition expressed by the victim's father, Judge Best asked the probation officer to locate the victim, who was now an adult. Judge Best also discussed the merits of Mr. Garcia's motion with the District Attorney and with the Livonia Chief of Police.

On December 15, 2011, Mr. Marquette enrolled as Mr. Garcia's counsel and moved to have the matter set for a hearing. Judge Best signed the order and set the hearing for January 6, 2012. Judge Best also ordered the clerk of court to subpoena the probation officer to appear at the hearing. On January 6, 2012, after Judge Best finished his drug court docket, Mr. Garcia's case was called for hearing. At that time, the District Attorney's office informed Judge Best that it had recused itself from prosecuting the case and that the Attorney General's office had not been served with the motions filed by Mr. Garcia or his counsel, nor had it been notified of the hearing date.

Louisiana C.Cr.P. art. 822 requires the court to conduct a contradictory hearing before deciding whether to terminate probation. Thus, the hearing on Mr. Garcia's

3

motion to terminate his probation should have been a contradictory hearing. Despite Judge Best's knowledge that the proper prosecuting agency did not receive Mr. Garcia's motion or notice of the hearing date and was not present, and despite the Assistant District Attorney's expressed intention not to participate in any meaningful or substantive way, Judge Best proceeded with the hearing.

Judge Best announced that the Assistant District Attorney would remain in court and "be a Court-watcher for the A.G.'s Office." The Assistant District Attorney agreed to be a "Court-watcher," but stated, "I'm going to remain silent." Asked later by the Judiciary Commission what he meant by the term "Court-watcher," Judge Best stated, "I don't know. I made that up. I - that just came out of my mouth."

During the hearing, Judge Best: (1) questioned the probation officer regarding the opinions of others concerning the early termination of Mr. Garcia's probation; (2) stated that the father of the victim was "indifferent" towards the proceedings even though the probation officer's unrebutted testimony was that the victim's father opposed the early termination of Mr. Garcia's probation; and (3) made statements concerning his own personal observations of Mr. Garcia's character gained through his interaction with Mr. Garcia at church and further indicated that those personal and out-of-court observations provided some basis for terminating Mr. Garcia's probation early. At the conclusion of the January 6, 2012 hearing, Judge Best issued an order terminating Mr. Garcia's probation.

On January 23, 2012, a media outlet published a news article about the early termination of Mr. Garcia's probation. The same day, Judge Best granted a "Motion to Set Aside the Early Termination of Probation" filed by the Attorney General's office, reinstating Mr. Garcia to supervised probation.

4

On January 26, 2012, by phone and a follow-up letter, Judge Best self-reported to the OSC the fact of his rulings in Mr. Garcia's case. In his letter, Judge Best included transcripts from Mr. Garcia's hearing. The OSC posed written inquiries and authorized an investigation, with which Judge Best cooperated.

In August 2014, the Commission filed a Formal Charge against Judge Best, alleging that his judicial actions and ruling in the Garcia case were motivated by his bias and/or prejudice in favor of Mr. Garcia and were influenced by his personal relationships. Alternatively, the Commission alleged that Judge Best's words and conduct gave the appearance of bias.

In its Formal Charge, the Commission alleged that Judge Best's conduct violated the following provisions of the Louisiana Code of Judicial Conduct: Canon 1 (a judge "shall personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved"), Canon 2A (a "judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"), Canon 2B (a "judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment[; a] judge shall not lend the prestige of the judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge"), Canon 3A(1) (a "judge shall be faithful to the law and maintain professional competence in it; a judge shall be unswayed by partisan interests, public clamor, or fear of criticism"), Canon 3A(4) (a "judge shall perform judicial duties without bias or prejudice[; a] judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice"), and Canon 3A(6) ("[e]xcept as permitted by law, a judge shall not permit private or ex parte interviews, arguments or communications

designed to influence his or her judicial action in any case"). The Commission further alleged that Judge Best engaged in willful misconduct relating to his official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute, in violation of La. Const. art. V, § 25(C).

Judge Best answered the Formal Charge and largely admitted its factual allegations. While he denied that his judicial actions and ruling were motivated by actual bias in favor of Mr. Garcia, Judge Best admitted his words and conduct gave the appearance of bias. On December 15, 2014, Judge Best and the OSC jointly filed a "Statement of Stipulated Uncontested Material Facts and Stipulated Conclusions of Law." The stipulation incorporated the underlying facts set forth above as well as Judge Best's response to the Formal Charge. Based on these stipulated facts, the parties agreed that Judge Best violated the Code of Judicial Conduct as alleged in the Formal Charge. Judge Best did not stipulate that he violated La. Const. art. V, § 25(C). In their stipulation, Judge Best and the OSC did not agree to what would be an appropriate disciplinary sanction.

The Commission accepted the parties' stipulations of fact, but initially declined to dispense with a hearing on the ground that a factual issue remained as to the issue of whether Judge Best was motivated by actual bias or prejudice. Although Judge Best had stipulated to violating the Code of Judicial Conduct as alleged in the Formal Charge, the Formal Charge contained alternative allegations regarding bias or prejudice (either Judge Best acted with actual bias or prejudice, or alternatively, his "words and conduct gave the appearance" of bias or prejudice). After the parties filed a joint motion for reconsideration of the Commission's ruling, the Commission agreed to dispense with the services of a hearing officer; however, the Commission reserved

6

the right to find additional facts based on the record, including facts relating to the issue of actual bias.

The Commission deferred making a decision on whether to accept the stipulated conclusions of law pending further proceedings. The Commission accepted the stipulations of law, in part, after calling Judge Best to appear before the Commission. During his appearance before the Commission, Judge Best denied being friends with Mr. Garcia. Describing his relationship with Mr. Garcia, Judge Best testified that he knew Mr. Garcia simply as an "acquaintance" and "a choir member" from attending a local church.

Judge Best addressed his communication with Mr. Garcia's parole officer. According to Judge Best, judges and parole officers routinely communicate in his judicial district. Although Mr. Garcia had already filed his motion to terminate probation at this time, Judge Best admitted he was "not thinking of the fine line of when a motion is filed," and that because Mr. Garcia's motion invoked a court proceeding, Judge Best should not have "asked [the probation officer] how Mr. Garcia was doing."

Judge Best also explained his discussion with the Livonia Chief of Police as occurring during the course of an unrelated conversation. Similarly, Judge Best and the District Attorney are friends and, during a casual conversation, Judge Best sought the District Attorney's impressions regarding Mr. Garcia's request to terminate probation.

The Commission sought Judge Best's reasons for proceeding with a hearing without a representative from the Attorney General's office being present. Judge Best explained that he usually conducts the questioning, and his mindset was oriented with the typical probation hearing in which the District Attorney's office (rather than the

7

Attorney General's office) is the prosecuting authority. Traditionally, in his court, the District Attorney "plays no part" once a probation matter has been brought for hearing. Judge Best therefore heavily relied, just as he did for other probation cases, on the testimony of the probation officer. Judge Best testified he did not rely on his own observations of Mr. Garcia, and Judge Best regretted that he remarked from the bench about his own observations of Mr. Garcia formed only from church and the choir.

Also during the Commission's hearing, Judge Best was asked why he indicated the victim's father was "indifferent" to the probationer's motion to terminate probation. Judge Best indicated it was a poor word choice and that what was on his mind was that the father referred the probation officer to the victim herself, who was no longer a minor, to determine if the victim objected.

Finally, during his appearance before the Commission, Judge Best apologized for his misconduct and expressed regret for his actions. He also described corrective measures he has already taken to avoid similar issues in the future.

Considering the stipulations and its own factfinding from its hearing, the Commission concluded that Judge Best violated Canons 1, 2A, 2B, 3A(1), 3A(4), and 3A(6) of the Code of Judicial Conduct. Regarding the violation of Canon 3A(4), the Commission found that Judge Best did not act with actual bias or prejudice.[1] Additionally, the Commission found that even if Judge Best did not intend to violate the Code of Judicial Conduct or the Louisiana Constitution, his actions were, nevertheless, intentional. The Commission, therefore, determined Judge Best had

---

[1] Canon 3A(4) provides, in pertinent part: "A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice[.]" The Commission found that Judge Best did not violate the first sentence just quoted inasmuch as his actions were not motivated by actual bias or prejudice. However, the Commission determined Judge Best violated the second sentence because it found "Judge Best manifested bias and prejudice by his words and conduct … ."

8

engaged in willful misconduct relating to his official duty, in violation of La. Const. art. V, § 25(C). However, the Commission did not find that Judge Best engaged in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute in violation of La. Const. art. V, § 25(C) because it found Judge Best's conduct was not "persistent." The conduct was limited to his handling of the motion to terminate Mr. Garcia's probation.

As noted earlier, Judge Best did not contest the recommendation and, along with the Commission, filed a joint motion urging this court to accept and implement the recommendation as a consent discipline. This court rejected the joint motion and docketed the case for a full evaluation of the record.

## DISCUSSION

This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const. art. V, § 25(C).[2] This court makes determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. **In re Quirk**, 97-1143, pp. 3-4 (La.12/12/97), 705 So.2d 172, 176. In addition to the substantive grounds for disciplinary action listed in the Louisiana Constitution, this court, in accordance with its supervisory authority over all lower courts, has adopted the Code of Judicial Conduct, which is binding on all judges and violations of the Canons contained therein may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). **In re Quirk**, 97-1143 at 4, 705 So.2d at 176.

---

[2] La. Const. art. V, § 25(C) provides, in pertinent part:

> On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.

In the instant matter, Judge Best stipulated that he violated Canons 1, 2A, 2B, 3A(1), 3A(4), and 3A(6) of the Code of Judicial Conduct. The Commission accepted these stipulations and, after considering Judge Best's testimony, the Commission additionally found that Judge Best violated La. Const. art. V, § 25(C). The Committee explained that Judge Best did not intend to directly violate La. Const. art. V, § 25(C), but, because Judge Best acted willfully in his handling of the Garcia case, his misconduct nevertheless amounted to "willful misconduct relating to his official duty" under La. Const. art. V, § 25(C). As noted previously, the Commission determined that regarding the violation of Canon 3A(4), Judge Best did not act with actual bias or prejudice.

Having reviewed the record, we agree with the stipulations and the Commission's findings for the following reasons.

As Judge Best belatedly realized, once Mr. Garcia filed a motion to terminate probation, Judge Best was obligated to refrain from *ex parte* communications designed to influence his action in the Garcia case. See Canon 3A(6). Judge Best mishandled the actual probation termination hearing at several junctures, most notably the initial juncture. Once Judge Best learned that the Attorney General's office rather than the District Attorney's office was the prosecuting agency, Judge Best should not have proceeded with the scheduled hearing given the absence of notice to the Attorney General's office. See Canon 3A(1).

Given his acquaintance with Mr. Garcia from a church choir, Judge Best's remarks from the bench about his observations of Mr. Garcia called into question whether Judge Best terminated Mr. Garcia's probation because Mr. Garcia enjoyed a special position of influence. See Canon 2B. However, the record establishes that Mr. Garcia was merely a casual acquaintance, and we find no clear and convincing

10

evidence that Judge Best acted in the Garcia case with actual bias or prejudice. The record reflects there was objective support for Judge Best's ruling, inasmuch as the probation officer testified Mr. Garcia had "completed every general aspect or condition of his probation," and a psychologist opined that Mr. Garcia "completed the sex offender curriculum" and was a "*low* risk to the community."

We hasten to reiterate, however, that Judge Best mishandled the Garcia hearing. As Judge Best acknowledged, the hearing should not have proceeded in the absence of the Attorney General's office and Judge Best's remarks about his personal observations of Mr. Garcia had no proper place in what should have been a contradictory hearing. This mishandling–especially in the context of Judge Best's acquaintance with Mr. Garcia–not only created an appearance of bias or prejudice in violation of Canon 3A(4), but also created an appearance of impropriety and undermined confidence in the integrity and impartiality of the judiciary in violation of Canon 2A.

Viewed globally, Judge Best's lapses in legal and ethical judgment fell below the standards required of a judicial officer. See La. Const. art. V, § 25(C); see also Canons 1 and 3A(1).

Having found Judge Best committed misconduct, we must decide the appropriate discipline. This court has identified a non-exclusive list of factors to be considered when imposing discipline on a judge. See **In re Chaisson**, 549 So.2d 259, 266 (La. 1989).[3] Utilizing these factors, the Commission determined the misconduct

---

[3] As identified in **Chaisson**, the non-exclusive list of factors to be considered by a court in imposing discipline on a judge are:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the

was serious, but was an isolated instance related to the handling of one motion. Judge Best acknowledged his misconduct and the Commission found him sincere in expressing remorse.[4] The Commission emphasized that Judge Best self-reported the Garcia incident to OSC, he cooperated with the ensuing investigation, and stipulated to violations of the Code of Judicial Conduct.[5] Judge Best described to the Commission steps that he has taken to avoid similar misconduct. Having seen and heard all the evidence, including Judge Best's testimony, the Commission determined that "[t]here is no evidence that Judge Best used his position to satisfy his personal desires in this matter."

The Commission viewed Judge Best's actions as having harmed the integrity and respect for the judiciary. The Commission noted that Judge Best acknowledged as much in his brief to the Commission: "Judge Best recognizes that his misconduct received media attention and placed the judiciary as a whole in a negative light." We likewise concur with this assessment. However, we also note, as did the Commission, that several respected community members testified that Judge Best has "integrity,

---

judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

[4] Judge Best gave a statement at the conclusion of the Commission's hearing. Although too detailed to reproduce in this opinion, these points encapsulate his self-evaluation:

I'm truly ashamed and embarrassed that I should find myself here today. Most importantly, I stand accountable for my failure to uphold the integrity of our great institution, the Louisiana Judiciary.
[O]nce I had the opportunity to reflect upon the facts and circumstances, it became very clear that I had fallen below the standard of ethical responsibility imposed upon me … .

[5] Despite the cooperation of Judge Best, despite the fact he self-reported within a matter of days on January 26, 2012, and despite a joint motion to dispense with the services of a hearing officer, the first order setting the matter for hearing was not issued until March 3, 2015. The Commission rescheduled the hearing eight days later, and the matter finally proceeded to a hearing on May 22, 2015.

high moral character, and excellent reputation in his community, both as a judge and as an individual." The record also reflects that for approximately ten years now, Judge Best has taken on additional responsibilities with the drug court program. Thus, while we agree that his lapses in judgment in the Garcia matter have cast the judiciary in a negative light, the record also gives us cause for optimism. Judge Best is capable of again promoting for the judiciary the respect he has earned for himself while in office. Judge Best has unswervingly indicated that he has and will continue to learn from this incident, which is consistent with the testimony of his character.[6]

Like the Commission, we find Judge Best's misconduct was an isolated event, but was nevertheless serious. Also serious were the Judge's positive steps in response. Judge Best vacated the probation revocation order. Moreover, Judge Best's prompt self-reporting, his cooperation, and the remedial measures he has undertaken to prevent additional misconduct are significant in determining appropriate discipline. We also agree with the Commission that there is no evidence Judge Best exploited his position as a judge to satisfy any personal desires. Where we differ from the Commission is in our evaluation of Judge Best's disciplinary record; however, we perceive the difference between our evaluation and that of the Commission to be only slight.

When recommending that Judge Best should be suspended for thirty days, the Commission significantly premised its recommendation on the fact that this court

---

[6] Reflecting both an acknowledgment of his misconduct and a commitment to corrective measures, Judge Best testified:

> As I preach to my drug court clients, when you are wrong, admit it after which there are three things you can do. You can stay the same. And if it's bad, it stays bad. You can make it worse. And thirdly, you can take advantage of your circumstances and make improvements. Adversity surrounds us. And if we learn from it, adversity can make you better and it can make us stronger.
> ….
> I don't want to be here. But as I stand before you, I can honestly say that I am a better person, a better judge. ...

previously has publicly censured Judge Best. In **In re Best**, 98-0122, pp. 2-3, 9 (La. 10/20/98), 719 So.2d 432, 433-34, this court censured Judge Best for misconduct in several matters: commenting to a reporter about pending cases; using a "straw poll" of a courtroom audience in a misdemeanor bench trial; and grabbing and publicly chastising a juvenile who had displayed belligerence and disrespect during a hearing. However, that misconduct occurred approximately twenty years ago, when Judge Best was a relatively inexperienced judge.[7] See **In re Free**, 14-1828, p. 23 (La. 12/9/14), 158 So.3d 771, 784-85 (noting that elapse of "over ten years" from prior discipline imposed by this court was appropriate to consider when weighing the **Chaisson** factor of prior ethical complaints). More recently, as the Commission noted, the Commission issued several admonishments and cautions to Judge Best. We find the actions by Judge Best, which prompted the Commission to issue those admonishments and cautions, were not analogous to the misconduct in the instant case.[8] Categorically, therefore, the prior disciplinary matters are either for a lesser type of conduct and markedly distinguishable from the instant case or for conduct which occurred long before the conduct at issue here.

While not diminishing the seriousness of receiving prior admonishments and cautions or of receiving discipline from this court, we do not ascribe the same heft to Judge Best's disciplinary record as did the Commission. On the other hand, while we favorably view (and have accounted for) Judge Best's self-reporting, cooperation, remedial efforts, and contrition, we do not find the underlying misconduct so slight

---

[7] Judge Best was elected as a judge on April 3, 1993.

[8] For example, in the most recent matter, Commission File No. 11-8286, Judge Best was cautioned for signing a transport order, directing an inmate to be brought to court. Judge Best had been recused from the inmate's case when he signed the transport order. In issuing the cautionary letter, the Commission did not dispute Judge Best's explanation that he overlooked the defendant's name on the transport order, which he signed when serving as a duty judge.

14

as to merit only another public censure, such as Judge Best proposes in his brief to this court. As we have previously held, the primary purpose of the Code of Judicial Conduct is the protection of the public rather than to simply discipline judges. **In re Marullo**, 96-2222, p. 6 (La. 4/8/97), 692 So.2d 1019, 1023. Whereas the Commission recommended a thirty-day suspension, we believe the purpose of judicial discipline is well served by suspending Judge Best for fifteen days.

### DECREE

For the reasons assigned, it is ordered that Judge James J. Best be suspended from office without pay for fifteen days. It is further ordered that Judge James J. Best reimburse the Judiciary Commission of Louisiana $1,610.71 in costs.

SUPREME COURT OF LOUISIANA

No. 2015-O-2096

IN RE:  JUDGE JAMES J. BEST

EIGHTEENTH JUDICIAL DISTRICT COURT,
PARISHES OF IBERVILLE, POINTE COUPEE, AND
WEST BATON ROUGE, STATE OF LOUISIANA

JUDICIARY COMMISSION OF LOUISIANA

**JOHNSON, C.J.**, concurs in part and dissents in part.

I agree with the majority's finding that Judge Best committed misconduct, however, I find the discipline imposed by the majority too lenient.

I am deeply troubled by the favoritism shown to Mr. Garcia by Judge Best. Not only did Judge Best engage in misconduct by using the power of his office to terminate a criminal defendant's probation without giving the prosecuting agency notice or an opportunity to participate in clear violation of La. C. Cr. P. art. 822,[1] I find his actions in doing so were motivated by his personal feelings towards Mr. Garcia and his family. In my view, Judge Best's actions demonstrate actual bias towards Mr. Garcia, such that

---

[1] La. C.Cr. P. art. 822 provides:

A. (1) Should the court on its own motion or on motion of the defendant consider setting aside a guilty verdict or a plea of guilty or, after the sentence is imposed, consider amending or modifying the sentence imposed, the district attorney shall be notified and the motion shall be tried contradictorily with the district attorney unless the district attorney waives such contradictory hearing.
(2) Such motions include but are not limited to motions for a new trial, motions in arrest of judgment, motions for amendment, modification, or reconsideration of sentence, and motions for modification of conditions of probation or termination of probation.

B. Additionally, if at any time after sentence is imposed, the defendant seeks the production of all or any portion of the district attorney's file in a criminal proceeding, the request for production shall be presented by written motion, which shall be tried contradictorily with the district attorney.

C. Each motion to set aside a guilty verdict or plea of guilty and each motion to amend or modify a sentence imposed shall be filed, considered, and decided in compliance with Code of Criminal Procedure Articles 881 and 881.1.

1

recusal was likely warranted.

Although there is no pattern of misconduct by Judge Best, I find his misconduct here particularly egregious. Judge Best's preferential treatment of Mr. Garcia is demonstrated in the record. In a sworn statement before the Judiciary Commission, Mr. Brouillette, Mr. Garcia's probation officer, stated Judge Best expressed an interest in Mr. Garcia's case beyond what he had done in other cases. The record also reflects Judge Best improperly took on the role of defense counsel by gathering evidence that would justify granting the motion to terminate probation. When Mr. Brouillette advised Judge Best the victim's father opposed early termination, Judge Best instructed him to find the victim to determine if she was opposed. Just Best also conducted *ex parte* conversations with the Lavonia Chief of Police and the District Attorney regarding Mr. Garcia. Additionally, the record demonstrates that Judge Best was in contact with Mr. Garcia and his family out of court twice weekly at choir practice and church, while at the same time serving as the presiding judge over Mr. Garcia's case. Judge Best referred Mr. Garcia to his close friend, Mr. Marquette, to represent him in the revocation proceeding.

Judge Best's personal feelings towards Mr. Garcia were evident during the hearing to revoke probation, wherein Judge Best stated:

> My observation is that I just don't know anybody that - - nicer than you and your wife. Your kids come to church. If I don't let you - - if I don't modify it at least to some extent, that I would consider my job to be, in this regards, a farce. There's nobody else - - if I don't modify it under these circumstances, then I would never modify it for anybody, and although there's a lot of sensitivity in these types of cases, it's clear that the - the young lady's - - she is indifferent about it. Her father is indifferent about it. The Chief of Police, who had nothing bad to say about you; ....

> So, I'll say no more, an I applaud you for becoming a better person and I hereby, because of your conduct, I'm going to - - considering the modification, I'm going to go a step further. I hereby terminate you, Anthony, Garcia, from all conditions of probation. You have met all of 'em. You are an asset to the community, to the church, to your family,

and your friends.

In my view, all of the above actions and remarks by Judge Best prove actual bias towards Mr. Garcia.

The Judiciary Commission recommended Judge Best be suspended without pay for thirty days, premised in part on the fact that this court had previously disciplined Judge Best in the form of public censures. The majority found this recommended sentence excessive because Judge Best's actions in those cases were not analogous to the misconduct in the instant case. One of the factors this court considers when imposing discipline is whether there have been prior complaints about this judge. See *In re Chaisson*, 549 So. 2d 259, 266 (La. 1989). As acknowledged by the majority, this court has previously censured Judge Best for misconduct in several matters, and the Judiciary Commission has issued several admonishments and cautions to Judge Best. I find it irrelevant that these other matters were not factually similar to the misconduct in the instant case.

The Commission's recommendation is supported by prior jurisprudence from this court. *See In re Free*, 14-1828 (La. 12/9/14), 158 So. 3d 771, 783-84, *reh'g denied* (La. 2/6/15) (wherein this court suspended judge for thirty days for, among other things, engaging in improper *ex parte* communications with counsel regarding the merits of a request that the judge recuse himself) and *In re Cresap*, 06-1242 (La. 10/17/06), 940 So. 2d 624, 635-36 (wherein this court suspended a judge for thirty days for, among other things, engaging in prohibited *ex parte* communications by telephoning one of the parties to discuss a contested issue in the case before him.) I would find, at a minimum, Judge Best should be suspended for a period of thirty days, as recommended by the Judiciary Commission.

3

06/29/2016

# SUPREME COURT OF LOUISIANA

## NO. 2015-O-2096

## IN RE: JUDGE JAMES J. BEST, EIGHTEENTH JUDICIAL DISTRICT COURT, PARISHES OF IBERVILLE, POINT COUPEE, AND WEST BATON ROUGE, STATE OF LOUISIANA

*JUDICIARY COMMISSION OF LOUISIANA*

**GUIDRY, J., concurs in part and dissents in part for the reasons assigned by Chief Justice Johnson.**

## SUPREME COURT OF LOUISIANA

### NO. 2015-O-2096

### IN RE: JUDGE JAMES J. BEST, EIGHTEENTH JUDICIAL DISTRICT COURT, PARISHES OF IBERVILLE, POINT COUPEE, AND WEST BATON ROUGE, STATE OF LOUISIANA

*JUDICIARY COMMISSION OF LOUISIANA*

**CRICHTON, J., additionally concurs and assigns reasons:**

While I agree with the majority's sanction and seek not to detract from the excellent discussion of the Louisiana Code of Judicial Conduct, I write separately to emphasize my view of the district judge's role in a probation revocation matter. As the opinion points out, La. Code Crim. Proc. Art. 822 requires that the court hold a contradictory hearing when modifying the terms of or terminating probation.[1] In this instance, Judge Best was self-admittedly aware that the proper prosecuting agency did not receive the defendant's motion to terminate his probation. Moreover, the Attorney General was absent from the hearing, and the assistant district attorney plainly and clearly expressed his intention not to participate in the hearing in any way. Despite this knowledge that the hearing was in no way compliant with statutory requirements, Judge Best proceeded. In my view, while I agree Judge Best did not act in this case with actual bias or prejudice, there is no question Judge Best should not have proceeded when he was fully cognizant of the deficient form of the hearing.

Concerning Judge Best's personal observations regarding the defendant during the probation revocation hearing, while Article 1101(B) of the Louisiana Code of Evidence states that the formal rules of evidence shall have limited

---

[1] La. Code Crim. Proc. Art. 881(B)(1) and (2), as well as La. Code Crim. Proc. Art. 897(A) also provide that a contradictory hearing is required when amending or terminating a sentence.

applicability in probation revocation hearings, this does not grant permission for a judge to become an advocate (or adversary), or for the rules of evidence to be globally inapplicable. Needless to say, personal, extraneous, and random comments derived outside the record have no place in probation revocation hearings or, for that matter, in any judicial proceeding.